**ROBERTA AYER, Plaintiff**

**v.**

**ANTHONY J. AYER, Defendant**

Civil No. 509-1971

District Court of the Virgin Islands

Div. of St. Croix

February 21, 1973

374

ISHERWOOD & COLIANNI, ESQS., Christiansted, St. Croix, V.I., *for plaintiff*

BRYANT & COSTELLO, ESQS., Christiansted, St. Croix, V.I., *for defendant*

YOUNG, *Judge*

## MEMORANDUM OPINION AND DECREE

This is an action for divorce wherein the plaintiff-wife prays for a decree of divorce and for support and custody of the one child of the marriage, also for alimony, costs and attorneys fees. The defendant-husband answered the complaint and counterclaimed praying that plaintiff's complaint be dismissed or, in the alternative, that a divorce be granted to both parties on a no fault basis on the grounds of incompatibility of temperament. Although it was not in his prayer for relief he indicated in the body of the counterclaim that both parties were fit parents to be custodian of the child of the marriage and suggested that custody of the child be awarded to them jointly with reasonable rights of visitation to each other during such periods that the other party has physical custody. The complaint was filed in December 1971 at a time when the plaintiff was living in St. Croix with the daughter, occupying the marital home at Estate Carlton. However, around the first of September 1972, plaintiff left St. Croix permanently and took up residence in Athens, Georgia where her parents reside and where her father is a professor at the University of Athens.

The parties were married in Frederiksted, St. Croix, on August 15, 1959, and the one child of the marriage, Jenney C. Ayer, was born in St. Croix on May 25, 1961. After the marriage the defendant constructed a home on property acquired prior to the marriage in Estate Carlton. It was a large, substantial and attractive home and the

375

parties resided in such home until their separation in July of 1971. Defendant engaged in the real estate brokerage business and the plaintiff became primarily a housewife, assuming all the duties of a mother, although she was on several occasions employed either as a teacher in grade school or as a clerk in various shops.

Both parties in their complaint and counter-complaint allege incompatibility caused jointly by the parties' attitudes and actions towards each other from which there grew violent quarrels and acknowledgements by both parties that neither loved the other. There were attempts to reconcile their differences but the several reconciliations made were unsuccessful in duration and it became pointedly obvious to both parties that they would not be able to save the marriage and a separation resulted.

It is my finding that the state of incompatibility of the temperaments of the parties was brought about by the inability and perhaps refusal of both parties to adjust himself or herself to the other party and to understand and make allowances in order that they might live together harmoniously as husband and wife and as mother and father of the child. I do not find fault with either party. The inability to adjust was brought about by a complete difference in their attitudes and lack of common interests. It is therefore in order that a divorce be granted to both parties on a no fault basis. Since the parties are in agreement as to custody of the child, that is to say that both parties feel they are fit and proper persons for custody, I will award custody to both parties jointly so that each shall have legal custody of Jenney C. Ayer. However, the decree shall provide that physical custody shall be with the plaintiff for the normal school periods of the year and that defendant shall have physical custody for one-half of the Christmas holiday period and one-half of the summer holiday period. Physical custody may be al-

376

ternated each year for the Easter holiday period and the parents shall alternate Christmas custody each year. Since plaintiff and defendant will be living many miles apart, it would be difficult to determine rights of visitation and it should be sufficient to say that during such times when the child is in the physical custody of one parent, the other parent shall have reasonable rights of visitation to see the child or to have the child with him or with her for weekends, or at such times mutually agreeable to both parties.

 We now face the more difficult question in this divorce action. That is the question of support for the child, support for the wife and/or property settlement. In this jurisdiction it is possible for divorce to be granted to both parties on the ground of incompatibility of temperament where neither party is at fault. This doctrine of Virgin Islands law has been referred to in many cases and more frequently by the late Judge Abraham Freedman who expressed the doctrine very clearly in the case of Poe v. Poe, 7 V.I. 30, 409 F.2d 40 (3rd Cir. 1969). It was in the Poe case that Judge Freedman established that even where the court may grant a divorce to both parties on the ground of incompatibility of temperament, the wife may still be entitled to support for herself. Judge Freedman also commented that the test for determining the amount of support or alimony for the wife is not whether she helped the husband to attain his existing financial status, but the court must consider all the circumstances surrounding the parties, the wife's necessity, the husband's financial ability, the health of the parties, the nature of their living together prior to the divorce and the wife's independence and ability to earn her own way.

Since I do feel that the plaintiff-wife should be granted alimony for her own support, I must review briefly those factors mentioned by Judge Freedman in the Poe case. Defendant-husband was born approximately 35 years ago

of a wealthy family; both his mother and father stemming from well-established well-to-do families. From early childhood defendant has been favored by trusts created by his parents and grandparents, the income from which trusts net him approximately on the average of $30,000 per year. The trusts are measured by lives in being, including those of his brothers and there is some possibility of his inheriting more than $1,000,000 in principal, depending upon the resolution of the lives in being, during his own lifetime. Although he can be considered to be a member of a very wealthy family, he has not lived ostentatiously during his lifetime. He was a good student in prep school and undergraduate school and while attending school and living in St. Croix since 1949 he has always lived modestly and has worked hard. He graduated from Cornell University in 1960 with a Bachelor of Arts degree, having majored in philosophy. Since graduation he has been a real estate broker in St. Croix and has done relatively well over the period of years, earning an enviable reputation for hard work and integrity and was in fact the President of the Virgin Islands Board of Realtors.

The plaintiff likewise was born of well-established people approximately 34 years ago. She graduated from Syracuse University with a Bachelor of Science, majoring in education and has worked as a speech therapist. Her father is a professor and member of the faculty of the University of Georgia in Athens. Her family, however, is one of more modest means and she has never been favored with an independent income such as that of her husband.

During the marriage the parties enjoyed a very comfortable social position in the St. Croix community. They represented a couple well-known and well-liked. They entertained regularly with large parties but I would not say on any lavish scale. Their daughter attended a private school in St. Croix, the family belonged to the beach, ten-

nis and yacht clubs and it seems that the parties had everything going for them for a very comfortable life except for one component which cannot be purchased—happiness.

When the plaintiff moved to Georgia she was forced to scale down her living in view of the fact that the defendant was paying her a court awarded pendente lite support allowance of $500.00 a month, $200.00 of which was for child support and $300.00 for her. She took with her to Georgia her 1966 MG Sports Coupe. She has no outside or independent income but she does have approximately $8,000.00 in stocks acquired by gifts from her husband and in-laws during the marriage. There is also a trust fund set up by the grandparents for Jenney C. Ayer, the income from which may be drawn upon for the maintenance and education of the child if need be. During the marriage the defendant-husband managed all finances; paid most of the bills even though the parties had a joint checking account. The house at Estate Carlton is presently appraised at $135,000.

The child is now in 5th grade and enjoys her schooling in Georgia. She also has good health. Plaintiff has testified that she needs $2,500 per month for both her support and the support of the child. The defendant does not feel that she needs more than $500 per month and believes that her lower cost of living in Georgia (as compared to the higher costs in the Virgin Islands) should make it possible for her to exist comfortably on $500 per month.

It would be appropriate at this time to take a brief look at defendant's current income and earning capacity. In his 1971 income tax return he reported approximately $27,000 income from interest, dividends and trusts and "earned income" from his real estate brokerage business of $26,000. From an 11 month statement for 1972, the indications are that he will probably close out the year with earnings of approximately $13,000. His trust income should

be approximately the same, that is around $30,000 (there was some additional trust income of $2,600 which he received in 1971 not shown on his 1971 income tax return since the tax was paid by the trustee). In sum, it would be fair to say that defendant's annual income is between approximately $45,000 to $50,000. His net worth can be summed up as follows:

| | |
|---|---:|
| Stocks & other securities on the Exchange | $ 158,000 |
| Prince Street Apartments in Frederiksted | 175,000 |
| Limetree Court—commercial complex in Frederiksted | 60,000 |
| Undeveloped plots at Estate LaGrange | 30,000 |
| Property at Estate Whim | 8,000 |
| His own house at Estate Carlton | 135,000 |
| Plot 14 of Estate Carlton (2½ acres—undeveloped) | 23,000 |
| Total | $ 589,000 |

In addition to the foregoing, defendant receives $700 per month rent from the former marital home at Estate Carlton which is presently on a year-to-year basis.

As I have stated above, plaintiff is seeking monthly alimony in the sum of $2,500 but in the alternative she is requesting the court to grant a lump sum gross alimony award of $125,000. I consider these claims to be overreaching and not justified. However, I do feel that the equities of this case could support some substantial award. The parties have been married for over thirteen years and the child will undoubtedly reside for the most part with the mother. The father established the social-economic level of the family. Now that the marriage is lost there is no reason for the mother, with the child, to be reduced to standards substantially lower than the pattern set during the marriage.

I cannot regard a dissolution of a marriage in the same manner and with the same financial considerations as I would regard a dissolution of a business partnership. Husband and Wife, by the traditional nature of

380

their respective roles in society and in business, have never been expected, nor are they now expected to be considered equal contributors to the accretion of assets in the growth and development of a family. Customarily the husband is the breadwinner and supplies the main source of income. The wife may have the single household role, or the dual role of housewife and mother, or the multiple role of housewife, mother, joint income producer and/or social partner; but no matter what single or multiple roles she has, she does in a real sense contribute to the family. Therefore, I see no need for a financial accounting between the estranged husband and wife. However, I do see a need to distinguish between investment acquisitions stemming from inheritance and family gifts and those acquisitions attributable to the work and efforts of one of the partners of the marriage during the marital cohabitation. Most of the investments of the husband in this case stem from family trusts, but nonetheless, the marital abode and some of the other family asset accretions in land and land improvements can be said to be the product of the husband's good management and business ability.

 I do not wish to imply that upon a dissolution of the marriage, the properties acquired by the husband or by the wife should routinely be divided equally between them. The equities of the parties will vary in each case. The laws of the Virgin Islands empower the court in granting a divorce to make a disposition of the homestead in accordance with the equity of the case. 33 V.I.C. § 2305(2).[1] A recently made appraisal of the Ayer home-

---

[1] In a Memorandum Opinion which I issued on February 14, 1973, in another divorce case (Knowles v. Knowles, Civil No. 396/1971—St. Croix Division of the Dist. Court of the V.I.), I discuss fully the legal and policy considerations in construing that section of Title 33 of the Code (which pertains to taxation of property) as augmenting the general powers of the divorce court as set forth in Title 16 of the Code. In this case, as in that case, the marital abode ceased being the "homestead" for tax exemption purposes prior to the time of the divorce hearing, but since it was the "homestead" up to the breakup of the marriage, I feel that the court is justified in so treating it as the homestead.

stead at Estate Carlton values it at $135,000. Although it does presently produce a substantial monthly rental of some $700 per month, I believe that a sale of the house in today's clearly depressed market of homes and homesites would not yield, after taxes, broker's commission, stamps and attorney's fees, more than $100,000. The husband has other assets and investments of about $450,000 to $500,000 aside from his substantial yearly trust income. The wife should have a share in the homestead or in its value, but not necessarily in the husband's other assets.

 In the Memorandum Opinion of the Knowles case (cited in the foregoing footnote), I discussed the Court's power to make a disposition of the homestead. There are reasons, however, why I would not exercise that power in this case. The land upon which the homestead was built was acquired by the husband prior to the marriage. Furthermore, the wife has left St. Croix and is in a poor position to be a co-owner of St. Croix realty. I mention the homestead only because it is a reasonable measuring stick for ascertaining the award, if any, of a gross sum as alimony. I favor the grant of an award in gross as opposed to monthly alimony "until death or remarriage" for several reasons. In the first place, such an award does represent the wife's share of the normal family accretion of assets. Now that the marriage, after thirteen years, has been broken up, she shall not be expected to come away from the marriage with nothing save for the award of a support allowance; nor shall he take everything and thereafter become her keeper to the extent of period alimony payments. In the second place, the gross award settles the equities once and for all, as they say locally—be done with it. Thirdly, the full realization by her of her fair share will not be contingent upon her survival or upon her remaining unmarried—there need

be no restraint on her future actions—no more than there would be on his.

In this case, I compute the gross alimony awarded at $50,000 using, as a measure, one-half value of the homestead. This is a reasonable sum and it should materially assist the wife who is still young, healthy and well educated but who needs assistance before she can make it on her own. Even with this financial help, she cannot live in the same style and confort that she would otherwise be able to live were she still married to defendant, but it should go a long way to provide for her and the child some semblance to the living they enjoyed in defendant's household and will give her the security that she needs.

With respect to child support, the previously set allowance of $200 per month is reasonable and should be ample. In addition, the father shall be responsible for major medical, dental and for all educational expenses. Whenever the child is living at school (with room and board being paid by the father) or when visiting her father for periods in excess of one week, the support allowance will be reduced one-half during such periods. The father will share in any decision as to the selection of any boarding school, college or university. The expense of the child's travel between the respective homes of her parents in the exercise of visitation rights will be borne by defendant.

## DECREE

Upon the foregoing findings of fact and conclusions of law and for the reasons expressed above, it is hereby ORDERED and DECREED:

1. Plaintiff and defendant are each granted a divorce absolute on grounds of an incompatibility of their temperaments.

2. Legal custody of the child, Jenney C. Ayer, is awarded to both parties. However, physical custody during the normal periods of school attendance will be with plaintiff. The parties will share equally the summer and winter recesses, alternating Christmas and Easter holidays as they may agree upon. Travel expenses shall be borne by defendant.

3. Reasonable rights of visitation shall be provided to each party whenever physical custody is with the other party.

4. Defendant shall pay to plaintiff for the care and support of the child, Jenney C. Ayer, until she attains her majority, or is otherwise emancipated, the sum of $200.00 per month. In addition, defendant shall be fully responsible for all major medical and dental expenses and shall be responsible for the child's education through college. Defendant shall share in any decision as to the selection of any boarding school, college or university.

5. Defendant shall pay a gross alimony to plaintiff in the amount of $50,000, payable $10,000 within thirty days and the balance within sixty days from the date hereof.

6. Defendant will transfer and release to plaintiff all of the furniture presently located in a warehouse in Frederiksted. The expenses of crating and shipping to plaintiff will be plaintiff's responsibility, but defendant shall pay all storage charges up to the time of shipment.

7. Defendant shall pay to plaintiff the sum of $4,000 attorney's fees which sum includes any and all court costs incurred by her.