**EMILY MORRIS, Plaintiff**

v.

**ERNEST MORRIS, Defendant**

Family No. D.153-1982

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

January 31, 1984

EDITH L. BORNN, ESQ., St. Thomas, V.I., *for plaintiff*

IVE ARLINGTON SWAN, ESQ., St. Thomas, V.I., *for defendant*

HODGE, *Presiding Judge*

## MEMORANDUM

On March 18, 1983, this Court entered its Divorce Decree in this matter, thereby dissolving the marriage of these parties which was entered into on June 19, 1962. In that decree the issues of alimony and property distribution were reserved for future adjudication.

These remaining issues have been argued and both parties and their witnesses were heard and exhibits were admitted. Subsequently, post-trial briefs were filed by both parties, and a post-trial hearing was held on November 18, 1983.

The background may be stated briefly. It involves a divorce in which the 51-year old plaintiff is seeking alimony from the 62-year old defendant as well as disposition of their property. The parties were married for 20 years, and from very poor beginnings had uplifted themselves financially, primarily through the efforts of the defendant, who not only worked long and strenuous hours but also engaged in questionable activities to raise funds for the construction of the marital abode, which has an approximate value of $85,000.00 and is fully paid for. Over the last several years the parties have drifted apart, thereby resulting in their divorce.

## II. PROPERTY DISPOSITION

A. *Real Property*

■ Pursuant to 33 V.I.C. § 2305 (1967) this court is authorized in divorce cases to dispose of the homestead in accordance with the equities of the case. Since by its definition and legal interpretation the term "homestead" does not refer to personal property, the § 2305 analysis is applicable to real property only. See, Dyndul v. Dyndul, 13 V.I. 376 (3d Cir. 1976).

■ In determining the equities in this case with respect to the marital abode, the court has analyzed the various circumstances surrounding the acquisition of the land and the construction of the homestead. During this phase of their marriage, I find that their relationship was that of a working team where they both contributed to the acquisition of the land and the construction of the home. Although the evidence is clear that the defendant has contributed the substantial percentage of both the cost of the land and the cost of construction of the home, I do not consider it essential to determine "just who paid for what and how much." See, Knowles v. Knowles, 9 V.I. 360 (D.V.I. 1973). Since the husband had a greater income he would naturally contribute more money to the homestead, but at the same time the wife would contribute more time to the care and maintenance of the home.

The court is satisfied from the testimony that both parties considered the land to be jointly owned despite the fact that it was initially purchased in the name of the defendant only. Defendant paid $900.00 of the $1,000.00 purchase price of the land, after the down payment of $100.00 had been paid by plaintiff. Much is made by plaintiff of the fact that defendant was not initially interested in acquiring the real estate on St. John, but this contention, even if true, does not alter the fact that defendant paid 90% of the cost of the

undeveloped land while expecting to share its title on an equal basis with plaintiff. The Deed of Gift granting 50% interest in the property from the defendant to the plaintiff attests to that fact, despite the denials of the defendant that he executed that deed. The court held a special hearing to inquire into the execution of the Deed of Gift and cannot find from the testimony that defendant did not execute the deed.

■ In addition, there is no question that defendant contributed the substantial portion of the cost of construction of the homestead, not only by way of labor and materials but also by raising the necessary funds by certain unstated questionable activities, thereby obviating the need for a mortgage. Subsequently, the Deed of Gift was executed on or about June 28, 1973, during the 11th year of their marriage and at a point in their marital life when it was understood by both parties that their interest in the homestead was share and share alike, regardless of their individual contributions. It is clear to the court therefore that the equities in this case militate in favor of awarding each party a 50% interest in the homestead as tenants-in-common.

■ With respect to the occupancy of the homestead, the court believes that its temporary order granting plaintiff possession of the upstairs, the larger unit, and defendant possession of the downstairs, the smaller unit, should be made permanent, and that defendant should not be evicted from the homestead because of his substantial contribution, as aforesaid, to the purchase of the land and the construction of the home, and because the equities of the case dictate that at his age he be allowed to enjoy the fruits of his labor during these years of his failing health. Indeed, occupancy of the downstairs apartment is more suitable for defendant in view of his heart ailment, since it avoids the climbing of stairs daily. Moreover, the plaintiff's possession of the upstairs is adequate for her in view of her use of the premises for her sewing endeavors.

■ With respect to real property located in St. Kitts and Nevis, the parties may institute separate actions in the appropriate forum for the disposition of those properties or the disposition of any other such nonhomestead real property. This court has no authority at this time to do so in a divorce action, and sees no need to invoke any alternative remedies under the circumstances of this case. See, Dyndul v. Dyndul, supra, 13 V.I. at 381.

## B. *Personal Property*

■ This court is authorized by 16 V.I.C. § 109(4) (Supp. 1982) to deliver to the wife those items of her personal property which are in the possession or control of the husband. This authority must necessarily be interpreted to infer that the court may also order the delivery to the husband of those items of his personal property which are in the possession or control of the wife, thereby avoiding the constitutional issue of equal protection and the legal issue of self-help.

■ In determining which personal property belongs to the wife and which belongs to the husband, the court has based its decision on provable ownership, and in the absence of provable ownership, considers the personal property to be jointly owned in equal shares.

With respect to the disposition of the household furniture, the evidence satisfies the court that they are jointly owned by the parties, except for the dressing table with mirror and the china display cabinet which belong to the plaintiff, and the sitting chair which belongs to the defendant. In order to ease the burden of distribution of the jointly-owned household furniture, the court asked each party to submit a listing of those items which they desired. After reviewing those lists the court considers the request of the defendant to be much more reasonable than that of the plaintiff, and will therefore award to him the items he requested except the dressing table from Nevis which was owned by plaintiff prior to the marriage.

Accordingly, defendant will be awarded, from the upstairs, the television set, the freezer, two living room chairs, the sitting chair which he owned prior to the marriage, and the small bedstead. In addition, defendant will be awarded those items presently located in the downstairs apartment. Plaintiff will therefore be awarded all the other household furniture located in the upstairs of the marital abode, except for items of a personal nature which belong to the defendant. Plaintiff's objection to some of the items granted to defendant is far outweighed by the fact that she will be receiving substantially more of the jointly owned furniture than the defendant.

With respect to the two vehicles and the two taxi medallions, plaintiff will be awarded ownership of the privately licensed car, a 4-door 1976 Maverick, as previously ordered by the court on March 18, 1983, and defendant will be awarded ownership of the 1979 Ford safari bus and the two medallions which were owned solely by him. Much was made by plaintiff as to the valuation of the taxi medallions, but regardless of their value they are items of personal property which were never jointly owned by the parties.

254

A more difficult question is presented with respect to the distribution of the bank deposits because of the various accounts which exist in different names. A review of the evidence reveals that there are three joint savings accounts in three different banks (Chase bank, Barclays bank, and Bank of Nova Scotia) totalling approximately $12,500.00. Since these accounts are owned jointly, they will be distributed in equal shares to each party. There is a savings account at First Pennsylvania Bank, in plaintiff's name in trust for her son, with a balance of approximately $3,500.00. Since defendant made no deposits to that account, it will be awarded to plaintiff in full. There is also a savings account at Chase in plaintiff's name in trust for a friend, Violet Lewis, with a balance of approximately $4,500.00. This account will also be awarded to plaintiff in full since defendant has no title to nor interest in those deposits.

In addition to the foregoing, there are three Certificates of Deposit with First Pennsylvania Bank in the approximate amounts of $14,000, $13,000, and $8,000. These certificates of deposit are registered in the name of defendant, in trust for Angela Morris, Calmita Walters, and Spencer Stapleton, Jr., respectively, and will therefore be awarded to him. Additionally, defendant has a checking account at Chase with a balance of approximately $2,000. This account, being his regular taxiing account, will be awarded to him in full. Finally, plaintiff and her son jointly control another savings account at Chase of approximately $4,500, as well as a Certificate of Deposit at First Pennsylvania Bank of approximately $3,500, both of which will be awarded to plaintiff. Each party will be entitled to any other account, wherever deposited, which is registered in their individual names, and to share and share alike the proceeds of any other account that is jointly owned.

It should be emphasized that where, as here, the husband deposits his earnings in a bank account in his name and in the name of his wife, and each is authorized to make withdrawals, the wife is entitled to a rebuttable presumption that she should benefit equally from those funds. However, the presumption may be rebutted by proof of the "realities of ownership" by the husband. See, Vetter v. Hampton, 54 Ohio St. 2d 227, 375 N.E.2d 804 (1978). Here, defendant has rebutted the presumption by establishing that he earned and deposited the funds presently existing in the three Certificates of Deposit, including the funds in the joint account from which the $5,000 was withdrawn to purchase the smallest certificate. Thus, when considered in the light of 16 V.I.C. § 109(4), defendant is the

owner of those funds and is therefore entitled to them. Plaintiff did deposit funds to her own accounts, which are awarded to her, and she did contribute to those joint savings accounts which are equally distributed to the parties, as aforesaid.

The net effect of the distribution of the funds in savings and certificates of deposit will result in plaintiff being awarded approximately $25,000 and defendant approximately $40,000, plus their respective shares of interest accrued on the various accounts since the hearing date.

## III. ALIMONY

The Virgin Islands divorce law provides, among other things, that whenever a marriage is dissolved, the court may allow a party in need to recover an amount of money, in gross or in installments, as may be necessary for support and maintenance. 16 V.I.C. § 109(3). Although the term "alimony" is not used, this section has been interpreted to be the alimony provision of the V.I. divorce law. See, Crooks v. Crooks, 12 V.I. 510 (D.V.I. 1975); Smith v. Smith, 12 V.I. 513 (D.V.I. 1975).

In determining whether alimony is warranted, the court must consider the circumstances surrounding the parties, the wife's necessities, the husband's financial ability, the physical condition of the parties, the nature of their life together, and the wife's independence and ability to earn her own way. See, Poe v. Poe, 7 V.I. 30, 409 F.2d 40 (3d Cir. 1969); Ayer v. Ayer, 9 V.I. 371 (D.V.I. 1973).

Since only the plaintiff has requested alimony, her needs were closely examined and the court finds that she has not established that she is a party in need of support and maintenance from the defendant. After paying particular attention to her testimony and her affidavit of January 18, 1983, the court rejects plaintiff's claim that her expenses total $731.25 per month because it is satisfied that the amount included for food, clothing, medical/dental, and laundry/cleaning are overstated. Conversely, her asserted monthly income of $471.25 is unacceptable because her sewing income of $100.00 is grossly understated, and although able to do so, she has made no attempt to seek employment during the temporary lay off from her regular seasonal job. The court is convinced that plaintiff's skill, physical health, age and intelligence enable her to earn sufficient income from her sewing activities and her seasonal employment to offset her expenses, and to maintain her financial independence from the defendant, which she has exhibited, both during the marriage, and throughout their separation and divorce. Indeed,

plaintiff has not requested a sum needed for her support, neither in installments nor in lump sum, and her affidavit further establishes that she has access to one certificate of deposit and two savings accounts totalling in excess of $11,000 in which the defendant has no interest, and over which she has full control, as well as joint savings with plaintiff totalling approximately $12,000. Indeed, based on the foregoing disposition of the real and personal property, and in particular the cash distribution to plaintiff, she is not and will not be in need of support and maintenance.

Moreover, defendant does not have the ability to provide support and maintenance to plaintiff. It was established to the satisfaction of the court that defendant's earning capacity has been severely curtailed because of his heart ailment and his age. Although defendant's affidavit of February 15, 1983 claims income of $400 per month and expenses of $791.50 per month, the court finds the former to be understated and the latter to be overstated. Indeed, if the amount of expenses claimed for gas ($200) is correct, then the income produced by that expenditure must exceed $400 per month in gross earnings. Nevertheless, even with an increase in gross income and a decrease in expenses, the court cannot find that the income will exceed the expenses to the extent that defendant could contribute to the support and maintenance of plaintiff. While defendant will be entitled to receive those funds from the foregoing distribution of personal property, that entire amount may be insufficient to meet his medical needs and living expenses since he has no health insurance, social security income or any other such old-age benefits.

Accordingly, after considering the foregoing factors as well as the distribution of personal property, the ownership and occupancy of the homestead, and the other circumstances surrounding the parties, the court concludes that plaintiff is not a party in need within the meaning of 16 V.I.C. § 109(3) and is therefore not entitled to an amount of money from the defendant, whether in gross or in installments, for support and maintenance (alimony). See, Alleyne v. Alleyne, 18 V.I. 544 (D.V.I. 1981).

## IV.

This memorandum should not be concluded without a word about the growing tendency of some parties to use the divorce forum as a battleground for staging unconscionable attacks against the opposing spouse. Counsel should advise their clients that a divorce action is an action in equity, and that one must do equity to get equity. Moreover, since in this jurisdiction divorce is no longer based on

fault, an equitable approach by both sides to the settlement of questions regarding title to property, possession of the homestead, custody and alimony would avoid delay, disappointment, and unnecessary animosity between the spouses. Indeed, our present policy of awarding Summary Judgment in those divorce cases where the parties have reasonably settled their own differences makes it unnecessary for them to have to come to court and eliminates the trauma, frustration, and embarrassment of a courtroom trial, as well as time-consuming legal briefs and judicial opinion writing.

In this case, the plaintiff's demand for sole title to the homestead, sole possession of the homestead, ownership of most of the personal property, plus entitlement to alimony are clearly unconscionable. Under the circumstances of this case her claims are so inequitable and unreasonable that she could not have seriously expected this court to agree. Thus, this case was ripe for resolution between the parties and their counsel if the standard of equity had been emphasized.

Accordingly, counsel are reminded and encouraged to explain to their clients the equitable nature of an action for divorce, and to recommend self-solution whenever appropriate and in the interest of justice.

## V.

In view of the foregoing, an order will be entered (1) awarding title to the real property to the parties as tenants-in-common, with each owning a 50% share, (2) awarding possession of the upstairs to plaintiff and the downstairs to defendant, (3) distributing the personal property as aforesaid, and (4) denying alimony to plaintiff.

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby,

ORDERED that title to the homestead is awarded to the parties as tenants-in-common, with each owning a fifty percent (50%) share; and it is further,

ORDERED that plaintiff is awarded possession and occupancy of the upstairs of the homestead and that defendant is awarded possession and occupancy of the downstairs of the homestead; and it is further,

ORDERED that the various personal property shall be distributed between the parties as stated in Section II(B) of the accompanying Memorandum, and it is further,

ORDERED that plaintiff's claim for alimony is DENIED, and it is further,

ORDERED that each party shall bear his own costs and fees.