**JULITO A. FRANCIS, Petitioner**
**v.**
**DEBRA L. WRIGHT-FRANCIS, Respondent**

Family No. ST-10-DI-226
Superior Court of the Virgin Islands
Division of St. Thomas and St. John
July 14, 2014

ANDREW L. CAPDEVILLE, ESQ., Law Offices of Andrew Capdeville, St. Thomas, USVI, *Attorney for the Petitioner*.

JULIE GERMAN EVERT, ESQ., Law Offices of Julie German Evert, St. Thomas, USVI, *Attorney for the Respondent.*

WATLINGTON, *Judge*

## MEMORANDUM OPINION

(July 14, 2014)

This matter came on for a trial on April 8, 2014, before the Honorable Debra S. Watlington, Judge of the Superior Court of the Virgin Islands for the determination of the parties' personal property and the marital homestead. Petitioner/Husband Mr. Julito A. Francis appeared with counsel Andrew L. Capdeville, Esq., and Respondent/Wife Dr. Wright-Francis appeared with counsel Julie German Evert, Esq.[1] The Court heard sworn testimony from Mr. Francis, Dr. Wright-Francis, Mrs. Joan Francis, and Erica Kellerhals, Esq.

## PRELIMINARY MATTERS

Prior to commencing the trial, the Court addressed stipulations and outstanding motions of both parties. The parties stipulated to the admission of Civil Complaint, ST-14-CV-188, *Balbo Corporation v. Julito Francis & Debra Francis*, filed by Mr. Gerard Castor. However, they do not stipulate or concede to the amount of monetary relief alleged in the pleading.[2] The parties also stipulated that the marital homestead, IB-29 Estate Solberg, St. Thomas, U.S. Virgin Islands, is valued at Seven Hundred Twenty Five Thousand Dollars ($725,000.00) subject to a mortgage of One Hundred Ten Thousand Dollars ($110,000.00). The parties further stipulated that the Court may make its determination of

---

[1] Julie German Evert, Esq., entered her notice of appearance in this matter on behalf of Dr. Wright Francis on February 12, 2014. Vincent A. Fuller, Esq., was the attorney of record at the previous hearing.

[2] Gerald Castor is the owner of Balbo Construction which performed construction work for the parties on the marital homestead located at IB-29 Estate Solberg. In the civil action, Balbo alleges that the parties are liable for outstanding payments amounting to Three Hundred Ninety Six Thousand, Five Hundred Forty Four Dollars and Seventy Six Cents ($396,544.76).

jointly owned marital household furniture based on evidence submitted from the January 13, 2014 hearing.[3]

Thereafter, the pending motions were addressed as follows: 1) Dr. Wright-Francis' Motion to Exclude Gerard Castor's testimony was rendered moot in light of the parties' stipulation; 2) the Court denied Dr. Wright-Francis' Motion to Exclude Mr. Francis and his mother, Joan A. Francis, from testifying that she has an interest in the parties' marital homestead; 3) the Court denied Mr. Francis' request to exclude the expert testimony and report of Attorney Erika Kellerhals; 4) the Court denied Dr. Wright-Francis' Motion to Exclude Mr. Francis from testifying that he is entitled to money from her earnings; and 5) the Court granted Dr. Wright Francis' Motion to Exclude testimony concerning the value of the parties' real and personal property located in the state of Georgia.[4]

## UNDISPUTED FACTS

The parties, Mr. Julito Francis and Dr. Debra Wright-Francis, were married on August 17, 1991 in Opelika, Alabama. They have one minor child, Brooklyn J. Francis, born on March 6, 2000 and one adult daughter, Saryn J. Francis, born on January 27, 1993. The parties both resided in Georgia until Mr. Francis relocated in 2004 to St. Thomas; while Dr. Wright-Francis and their daughters joined him in 2005. The parties resided at No. IB-29 Estate Solberg, St. Thomas, Virgin Islands during their marriage. A Decree of Divorce was entered on July 25, 2012, dissolving the marriage.

Mr. Francis is the son of Joan Francis and brother to Diane A. Marsh. Joan Francis and her daughter, Diane, acquired the property known as 1B-29 Estate Solberg from the Virgin Islands Housing Finance Authority which required them to build on the land within a set time period. After realizing that they would not be able to comply with program regulations, they transferred ownership to Mr. Francis to begin construction to help secure financing to build. Mr. Francis' mother and sister conveyed Parcel No. IB-29 Estate Solberg to Mr. Francis and Joan Francis by Warranty Deed on April 12, 1995. Subsequently, on October 29, 1997, Joan Francis

---

[3] This matter came before the Court for a final hearing on January 13, 2014, to resolve the outstanding issues regarding distribution of personal property.

[4] The Court's jurisdiction in this matter is limited to jointly owned personal property and the marital homestead.

executed a Quitclaim Deed transferring her interest in Parcel No. IB-29 Estate Solberg solely to Mr. Francis.[5] A dwelling structure was completed in 1988 which Joan Francis moved into in 2000. At that point, Joan Francis began contributing to the mortgage and the utility bill on a monthly basis until 2006. In January 2014, Joan Francis resumed making contributions of six hundred dollars ($600.00) per month not including utilities.

No. IB-29 Estate Solberg, is a two (2) level structure and has three (3) units. The upper level has three (3) bedrooms and two (2) bathrooms and the lower level is split into two (2) separate one (1) bedroom, one (1) bathroom units. Dr. Wright-Francis continues to occupy the main level of the marital homestead while Mr. Francis has remained in the one (1) bedroom unit which he previously used as his office. Joan Francis, resides in the other one (1) bedroom apartment on the lower level. Mr. Francis is responsible for the mortgage payments for the property. Dr. Wright-Francis assisted with some maintenance of the property.

In January 2014, Dr. Wright-Francis purchased an apartment at the Towers Condominiums in Estate Contant which she uses for rental purposes.[6] The marital homestead has structure problems and has deteriorated throughout the parties' marriage.[7] Notwithstanding the purported poor condition of the home, Mr. Francis would like to retain the marital homestead.

The parties acquired multiple assets throughout their marriage in the form of real property in the Virgin Islands and Georgia; individual retirement accounts; and other investment accounts. Mr. Francis was employed with the U.S. Virgin Islands Government, first as the Executive Director of the Public Finance Authority (PFA), then as the Chief Executive Officer of the Virgin Islands Next Generation Network (VINGN). He was later terminated in October of 2011 from VINGN where he received an annual salary of One Hundred Seventy One

---

[5] Mr. Francis filed copies of the 1995 Warranty Deed and 1997 Quitclaim Deed with his exhibit list on March 28, 2014.

[6] Mr. Francis filed a copy of Dr. Wright Francis's Warranty Deed and Mortgage for Apartment No. F-15, The Towers Condominiums located at No. 7A Southside Quarter, St. Thomas, Virgin Islands, with his Motion to the homestead.

[7] Mr. Francis' exhibits 10(c), 10(d), 10(e), 10(f). 10(g), 10(k), and 10(m), which were admitted into evidence are photos depicting the deteriorated state of the home and its structural problems.

Thousand Dollars ($171,000.00). He challenged his termination but after an employment mediation, the decision was upheld. After being terminated, Mr. Francis, an investment manager, has focused on his wealth management business, known as ACSB Capital Management LLC.

Dr. Wright-Francis, a medical OB-GYN, contracts medical services with the East End Medical Clinic as an OB-GYN for an annual amount of Two Hundred Thousand Dollars ($200,000.00) and with Schneider Regional Medical Center for about Two Thousand Five Hundred Dollars ($2,500.00) per-week for on-call services.

## PROCEDURAL HISTORY

Julito Francis filed a verified Petition for Divorce on November 4, 2010. On February 3, 2011, Dr. Wright-Francis filed an answer to Mr. Francis' petition and on March 29, 2011 the Court referred the parties to mediation. The parties mediated but were not able to reach an agreement. During the mediation period, the parties filed motions concerning custody and wasting of marital assets. Consequently, the Court issued an Order on December 22, 2011, prohibiting them from "disrupting" their children and "destroying, removing, concealing or otherwise harming or reducing the value of the property of one or both of the parties."[8] On March 26, 2012, the Court held a final pretrial conference to set deadlines for trial. The Court also maintained the parties' visitation agreement.[9]

On July 16, 2012, Dr. Wright-Francis filed an Emergency Motion for Issuance of Show Cause Order, alleging that Mr. Francis violated the Court's December 22, 2011 Order by withdrawing Two Hundred Twenty Thousand, One Hundred Seventy Nine Dollars and Ninety Three Cents ($220.179.93) from his Fidelity Rollover IRA account. While the Court initially granted Dr. Wright-Francis' motion on July 17, 2012, that Order was later vacated on July 25, 2012. The Court reasoned that it was not able to make a determination since discovery had not been completed.

---

[8] *See*, Paragraph (2) (b) of this Court's Order in this matter dated December 22, 2011.

[9] Mr. Francis informed the Court, in his Motion to Restrain Respondent From Denying Petitioner Access to Former Marital Residence that the parties negotiated a visitation agreement in September of 2011, whereby both parties have custody of their minor daughter, Brooklyn, for fifteen (15) days of each month. Such agreement was not contested by Dr. Wright Francis.

Instead, the Court instructed the parties to retain a Certified Personal Accountant (CPA) to appraise all of their jointly owned properties and to recommend how the marital assets should be divided. The parties never complied with the order to retain an accountant.[10]

On July 25, 2012, the Court issued a Divorce Decree to the parties and reserved determination on issues of custody, alimony, personal and real property for a later date. Meanwhile, the parties continued to live in separate sections of the marital homestead. During a June 17, 2013 hearing, the parties informed the Court that they were able to resolve the issues of custody and visitation amicably, consistent with their earlier agreement. On July 12, 2013 the parties were referred back to mediation. After the second mediation session, the mediator reported that the parties had reached a total impasse.

However, in a status conference held on September 10, 2013, the parties advised the Court that they had reached an agreement and through counsel, the terms were read onto the record. Each party confirmed that the terms were accurate and they agreed to them. The Court acknowledged the terms and ordered counsel for both parties to reduce the agreement to writing and submit it with their client's respective signatures. Instead each party submitted separate draft settlements that differed slightly from the oral agreement articulated in Court. As a result, the Court entered an Order on November 4, 2013 that incorporated the negotiated terms which the parties stipulated to on the record in the September 10, 2013 hearing. On November 18, 2013, this Court entered an Order which granted a Motion to Amend filed by Dr. Wright-Francis. The Order amended the previous November 4, 2013 Order which instructed Mr. Francis to pay his settlement amount by certified check or bank draft instead of transferring the sum from his retirement account directly to Dr. Wright-Francis' account or to her personally by electronic means. Mr. Francis objected to Dr. Wright-Francis' method of payment request, filed a timely opposition on November 20, 2013, and requested the Court to reconsider its Amended Order entered on November 18, 2013.[11]

---

[10] See Court's July 25, 2012 Order.

[11] On November 18, 2013 the Court entered an Order on Dr. Wright-Francis's November 6, 2014 Motion to Amend, two (2) days before the fourteen (14) day statutory period for

20

Having reviewed the parties conflicting requests, the Court vacated its November 18, 2013 Order because it found that the parties' settlement agreement lacked mutual assent since the parties could not agree on the method of payment. The parties also claimed that they would incur injury if payment was not made as each requested. The Court determined that the parties negotiated and accepted the agreement based on two (2) different interpretations of its terms. As a result, this matter was scheduled for trial. Subsequently, Mr. Francis moved the Court on February 12, 2014 for permission to return to the marital homestead since his existing apartment poorly accommodated him and his daughter for their monthly visitation and Dr. Wright-Francis had recently purchased property on St. Thomas.

## THE PARTIES' ARGUMENTS

Mr. Francis advised the Court that he is solely responsible for the mortgage on 1B-29 Estate Solberg.[12] Mr. Francis also informed the Court that he paid all of the household expenses without any contribution from Dr. Wright-Francis and continues to pay those expenses. He also claims that he has made payments on the balance owed to Balbo for construction work on IB-29 Estate Solberg.

Mr. Francis seeks a portion of Dr. Wright-Francis' current and future earnings since he claims that he supported her financially while she completed medical school in 1992. As a result, Mr. Francis asserts that Dr. Wright-Francis' medical license is marital property which is divisible like the parties' other assets.

Additionally, Mr. Francis contends that Dr. Wright-Francis' net worth is Two Million One Hundred Three Thousand, Eight Hundred Fifty Seven Dollars and Twenty Four Cents ($2,103,857.24). He claims that his net worth is One Million One Hundred Nine Thousand, Nine Hundred Twelve Dollars and Eighty Two Cents ($1,109,912.82). Mr. Francis seeks Four Hundred Ninety Six Thousand Dollars ($496,000.00), to make his

---

Mr. Francis to respond ended, pursuant to Rule 15(b)(3) of the Federal Rules of Civil Procedure. Mr. Francis filed his opposition to the Motion to Amend on November 20, 2013.

[12] The mortgage for the Solberg property stipulates that only Mr. Francis signed the promissory note despite both parties being listed on the document as "Borrower."

net worth equal to Dr. Wright-Francis.[13] Mr. Francis also expressed a willingness to rescind his request, if Dr. Wright-Francis relinquishes her interest in the marital homestead.

Mr. Francis denied accusations of depleting any marital property. Instead, Mr. Francis contends that he withdrew money from his retirement account to pay off expenses, including mortgage payments, other property expenses and travel expenses back and forth to Washington D.C. where he visits with the parties' older daughter and cultivates business for his company, ACSB Capital Management LLC.[14]

The Court also heard sworn expert testimony from Erika Kellerhals, Esq., (hereafter Kellerhals) on behalf of Dr. Wright-Francis. Kellerhals testified that she analyzed Mr. Francis' financial records. She advised the Court that she submitted her findings in two (2) reports: the first one analyzed Mr. Francis' bank accounts, investments, credit cards and retirement account and the second report assessed the financial reports Mr. Francis submitted to the Court as exhibits for trial.[15] Kellerhals testified that the records she received from Mr. Francis were incomplete and that it appears that Mr. Francis was commingling funds since she was not able to distinguish between his personal and business expenditures. Kellerhals also refuted Mr. Francis' claim that he has been cultivating business in Washington, D.C. since his records do not show evidence that he has any clients outside the territory of the U.S. Virgin Islands. With respect to the money owed to Balbo, Kellerhals testified that financial records show that Mr. Francis has paid Balbo about Fifteen Thousand Dollars ($15,000.00) and Dr. Wright-Francis has paid approximately Thirty Thousand Dollars ($30,000.00).

Kellerhals claim that although in deposition Mr. Francis submitted incomplete bank account information to 2011-2012,[16] she found that Mr. Francis spent approximately One Hundred Seventeen Thousand Five

---

[13] If the Court were to add both of the parties' purported net worth, divide them in half, and then subtract Mr. Francis' individual net worth it would amount to $496,000.00.

[14] The parties' older daughter, Saryn J. Francis, born on January 27, 1993, is an undergraduate student at Howard University located in Washington, D.C.

[15] Kellerhals' Curriculum Vitae reflects her education and expertise in legal tax related assessments and financial analyses.

[16] Mr. Francis submitted Fidelity IRA and 401K statements for December 2011-February 2012, April 2012-May 2012; Charles Schwab IRA statements for November 2012-December 2012; an AmEx credit card spending report for the year of 2011; and Marriott

Dollars and One Cent ($117,005.01).[17] For the year 2012, Mr. Francis submitted his 1040 tax form, and again, Kellerhals found that Mr. Francis spent about One Hundred Seventy Nine Thousand Twenty One Dollars ($179,021.00).[18]

Kellerhals concluded that Mr. Francis' spending habits increased drastically since the parties divorced on July 25, 2012, in violation of the Court's December 22, 2011 Order. Kellerhals opined that: 1) retirement funds are marital assets; 2) Mr. Francis' wasted marital assets by withdrawing money from his annuity early to cover his excessive spending in the amount of Two Hundred Twenty Thousand One Hundred Seventy Nine Dollars and Ninety Three Cents ($220,179.93); and 3) that Dr. Wright-Francis is entitled one half of the "wasted" amount of about One Hundred Ten Thousand and Ninety Dollars ($110,090.00).

Dr. Wright-Francis testified that Mr. Francis is not entitled to earnings resulting from her medical degree because the parties, collectively, paid off student loans by selling stocks that were jointly purchased. Dr. Wright-Francis also testified that she obtained her degree in 1992, just a year after the parties were married. Dr. Wright-Francis further contends that she did not work for one (1) year in order to care for the parties' children in the early years. She contends that except for approximately two (2) to four (4) years, the parties' income were comparable. She confirmed her work contracts with the East End Medical Clinic and the Schneider Regional Medical Center.

Dr. Wright-Francis acknowledged the purchase of a unit at the Towers Condominiums in Estate Contant on January 17, 2014, for which she currently collects a monthly rent. She confirmed that she continues to reside at IB-29 Estate Solberg with the parties' minor daughter.

Dr. Wright-Francis informed the Court that she is seeking half of the value of the parties' marital homestead located at IB-29 Estate Solberg and half of the value of what Mr. Francis "wasted." She contends that Joan Francis does not have any ownership interest in the Solberg property

---

Credit Card statements for December 24, 2011-December 23, 2012. Mr. Francis also submitted Texas Credit Union statements for December 2012-January 2013 and Banco Popular statements for March-May 2013, which are outside the scope of investigation.

[17] *See*, Respondent's Exhibit 3A

[18] *See*, Respondent's Exhibit 3A.

and that the homestead should be sold if Mr. Francis is not able to buy her out.

## ANALYSIS

In an action for divorce, this Court has the authority to equitably divide joint personal property and real property, limited to the marital homestead as defined in Title 33 V.I.C. § 2305(d). *Bradford v. Cramer*, 54 V.I. 669, 676 (V.I. 2011). Real property owned by the couple, other than the marital homestead, is divided by way of a civil partition action. *Fuentes v. Fuentes*, 38 V.I. 29 (Terr. V.I. 1997). When determining the equity of the distribution, the Court also has broad discretion to consider the case's most salient facts. *Charles v. Charles*, 788 F.2d 960, 965 (3rd Cir. 1986). The Supreme Court of the Virgin Islands further refined the Court's discretion to divide property by eliminating marital fault as a factor in dividing the homestead. *Garcia v. Garcia*, 59 V.I. 758 (V.I. 2013). "The doctrine of equitable distribution is applied to effectuate a fair and just division of the property between the parties. As its name suggests, **equitable distribution does not necessarily mean 'equal,' only 'equitable.'** " *Fuentes*, 38 V.I. at 40 (emphasis added).

### A. Marital Homestead

Pursuant to Title 33 V.I.C. § 2305(a), a homestead is defined as "the abode including land and buildings, owned by, and actually occupied by, a person, or by members of his family free of rental charges." The Court in *Garcia* quoted *Harvey v. Christopher*, to explain that although the Virgin Islands Code does not expressly define a 'marital homestead,' both the United States Court of Appeals for the Third Circuit and the Appellate Division of the District Court interpreted Title 33 V.I.C. §§ 2305(a), (c) to hold that a "marital homestead' is any 'homestead' in which a husband and wife both reside during the marriage and that is owned by one or both of the spouses." *Garcia*, 59 V.I. 758 (V.I. 2013) *quoting, Harvey v. Christopher*, 55 V.I. 565, 572 (V.I. 2011).

Pursuant to the parties' stipulation, IB-29 Estate Solberg is valued at Seven Hundred Twenty Five Thousand Dollars ($725,000.00) subject to a One Hundred Ten Thousand Dollars ($110,000.00) mortgage. Although the parties dispute the amount owed to Balbo, they acknowledge that

24

Balbo Construction is owed money for work it has done on the homestead.[19]

Testimony revealed that Dr. Wright-Francis assumed responsibility for the children's school tuition and cost of other activities during the course of their marriage. Mr. Francis satisfied almost all expenses related to their home including the mortgage property and home insurance payments. Since the parties' divorce, the parties have shared equally their children's expenses and Mr. Francis has continued to pay all real property expenses.

Here, the home located at IB-29 Estate Solberg, St. Thomas appears to satisfy the requirements outlined in Title 33 V.I.C. § 2305(a) since Mr. Francis gained ownership rights when: 1) his mother and sister conveyed the property to him and 2) the parties resided in the home from 2005 until they terminated their marriage in 2012. However, the Supreme Court, through *Garcia*, required that further examination is needed when a purported marital homestead is comprised of multiple units like the Solberg property.

In *Garcia*, the parties resided in a two level structure that was partitioned of into four (4) separate independent apartments. The wife argued that the marital homestead constituted all four (4) apartments and consequently, she was entitled to an equitable portion of the homestead. The husband opined that all of the apartments should not count towards the homestead since "(1) it had a dual nature, as portions of the building were rented to tenants, and (2) although Felipe and Edna resided there at some points during their marriage, there were large spans of time during which the parties did not occupy it together." 59 V.I. 758 (V.I. 2013). Ultimately, the *Garcia* Court remanded the matter back to the Superior Court for further consideration without determining which units comprised the marital abode.

Here, the Solberg property is apportioned into three (3) units. The parties resided in the larger unit with their daughters for approximately seven (7) years while Mr. Francis' mother lived in a smaller unit. The third unit was used as a home office by Mr. Francis, until he started to use it as his living quarters after the parties divorced. Unlike *Garcia*, the parties did not use their other units as rental property to produce income. Mr. Francis asserted that Joan Francis contributed to her household

---

[19] See Civil Complaint, *Balbo v. Julito Francis & Debra Francis*, ST-14-CV-188.

25

expenses for a portion of the time she has lived there. It is also important to note that Mr. Francis' mother resided on the property first and has been the only other resident.

■ The Court has considered that the parties resided in the Solberg home from 2005-2012 for approximately seven (7) of their twenty one (21) years of marriage with their children. Mr. Francis' mother has occupied an attached apartment on the same property since 2000. They have all contributed in various degrees to the subject property. Both parties are clearly capable of providing for themselves and their children, as they are both accomplished professionals and have already agreed to share equally in the costs of raising their children. Dr. Wright-Francis obviously has the capacity and means to secure alternative housing; and has neither demonstrated a need or desire to remain in the marital homestead.

This Court cannot disregard the fact that neither party purchased the real property upon which the marital homestead was built. Much consideration is given to the fact that Mr. Francis acquired the property from his mother to help her construct a home for her to live. While evidence shows that the parties together were able to finance the construction, they benefitted by living on the property with their children for seven (7) years of their twenty-one (21) years of marriage. Joan Francis has lived in an adjoining apartment for approximately fourteen (14) years. Thus, only the main residential unit (inclusive of what was the home office and children's area) that the parties occupied during their marriage constitute the marital homestead and not the entire property known as IB-29 Estate Solberg.

In view of the circumstances surrounding the acquisition and construction of IB-29 Solberg, maintenance and occupancy of said property, the Court finds that based on a balancing of equities, Mr. Francis should retain possession of the marital homestead. Moreover, having considered the stipulated assessed value of the real property, and the debts associated with the property, and given serious consideration to the equities involved under the particular facts herein, the Court has determined that Dr. Wright-Francis has a thirty-five percent (35%) interest in the marital homestead which constitutes approximately seventy percent (70%) of the developed property. As a result Seventy Six Thousand, Six Hundred Fifty Dollars ($76,650.00) plus $30,000.00 reimbursement for moneys expended for constructions costs represents a fair award to

Dr. Wright-Francis for her contributions and interest in the marital homestead. Thus, Mr. Francis will be required to pay Dr. Wright Francis a total of One Hundred Six Thousand, Six Hundred Fifty Dollars ($106,650.00).

## B. Personal Property

■ The Court may distribute personal property in accordance with Title 16 V.I.C. § 109 (4). However, the statute does not define marital property. "Whether an asset is marital property or separate property for purposes of distribution of the marital estate, is a matter reserved to the sound discretion of the trial court." *See, Feddersen v. Feddersen*, 68 F. Supp. 2d 585, 41 V.I. 230 (D.V.I. 1999). *See also, MacAleer v. MacAleer*, 1999 PA Super 35, 725 A.2d 829, 831 (1999). Once these distinctions have been made, the trial judge has broad equitable powers in disposing of marital property. *Fuentes*, 38 V.I. at 35.

■ Although not specifically defined, marital property has been construed to encompass any property which the couple acquired during the marriage and which is subject to equitable distribution upon divorce. *See Fuentes v. Fuentes*, 247 F.Supp.2d 714 (2003). *See, Felix v. Felix*, 1998 WL 458499, *2 (D.V.I. 1998). *Compare*, 16 V.I.C. 68 (defining what constitutes 'separate property' of a spouse, not subject to distribution).

## 1. Equitable Distribution of Retirement Accounts

■ Considering the tremendous statutory examples and case law from other jurisdictions holding pension funds as marital property, the Virgin Islands has determined that a pension fund is also marital personal property, subject to claim by the other spouse upon divorce. *Fuentes*, 38 V.I. at 40. The *Fuentes* Court goes on to rationalize its decision by quoting the Rhode Island Supreme Court in *Stevenson v. Stevenson*, 511 A.2d 961, 965 (R.I. 1986):

> To the extent earned during the marriage, the [pension] benefits represent compensation for marital effort and are substitutes for current earnings which would have increased . . . the marital standard of living or would have been converted into other assets divisible at dissolution. Subjecting the benefits to division is just, because in most cases the retirement benefits constitute the most valuable asset the couple has acquired and they both have relied upon their pension payments for

security in their older years. *Family Law and Practice*, § 37.07[1] at 37-81 (1985).

*Fuentes v. Fuentes*, 38 V.I. 29 (Terr. V.I. 1997). The evidence shows that Mr. Francis has approximately Five Hundred Thousand Dollars ($500,000.00) in his retirement account. While, Dr. Wright-Francis has an amount that exceeds Five Hundred Thousand Dollars ($500,000.00), the exact amount is unknown.

According to the Court in *Fuentes*, both parties are entitled to an equitable share of the other's retirement account. The *Fuentes* Court further explains that there are two (2) different methods used to determine the percentage which spouses are entitled. The first method presumes a present value on the retirement plan based on the expected lifespan of the employee-spouse. *Weir v. Weir*, 173 N.J. Super. 130, 413 A.2d 638 (1980). This method requires the Court to determine values contingent on life expectancy and employee-spouse's share of the retirement pay. *Fuentes*, 38 V.I. at 41. The second method calculates the percentage that the non-employee is entitled to, based on length of employment and marriage. They receive benefits when they become available under the plan. *Id.* Both methods require basic knowledge of the retirement plans that includes, but are not limited to the following information: 1) present value; 2) account history; 3) retirement plan regulations; and 4) the distribution schedule.

With regard to the retirement accounts, the parties have simply failed to submit sufficient information for the Court to make a determination. Mr. Francis' submission only demonstrates the balance of his Fidelity IRA account when the parties dissolved their marriage in 2012. The Court has no reliable evidence from Dr. Wright-Francis regarding her retirement fund other than her vague testimony. Neither party has made sufficient information available to this Court, to justify the division of their respective individual accounts.

■ On July 25, 2012, the Court refused to make a determination on Dr. Wright-Francis' show cause motion because it lacked sufficient evidence and ordered the parties to commission a CPA *supra*. The parties failed to comply. As a result, the record is still void of evidence of a CPA analysis or recommendation to aid the Court. Kellerhals reports and testimony are not helpful in this regard since it was designed for the sole purpose of demonstrating waste of assets by Mr. Francis. Notwithstanding,

28

it appears that the parties have approximately the same amount in their funds, or close thereto. Thus, a division is unnecessary and each party is entitled to retain their existing interest in their own accounts.

### 2. Equitable Distribution of the Medical Degree

■ Mr. Francis requests equitable distribution of Dr. Wright-Francis' medical degree, which was acquired after one (1) year of marriage. The U.S. Virgin Islands has not previously decided whether educational or professional degrees constitute marital property.[20] Most states hold that an educational degree is not marital property. Courts have consistently considered whether one spouse had postponed his or her own career and educational goals to support and contribute to the career and educational goals of the other spouse. *See, Mahoney v. Mahoney*, 91 N.J. 488, 453 A.2d 527, 531-32 (1982); *In re the marriage of Sally K. Olar*, 747 P.2d 676, 678 (1987). They also acknowledge the injustice that occurs after "a couple collectively works towards the attainment of an advanced educational degree or career goal," the expectation of a higher standard of living in the future can be frustrated by the dissolution of a marriage. *In re the marriage of Sally K. Olar*, 747 P.2d 676, 678 (1987). They also acknowledge that injustice that occurs after "a couple collectively works towards the attainment of an advanced educational degree or career goal," the expectation of a higher standard of living in the future by the dissolution of marriage. *In re the marriage of Sally K. Olar*, 747 P2d. 676, 678 (1987).

■ Many states have compared professional degrees to pension or retirement plans when establishing what constitutes marital property. Pension and retirement plans entitle an owner to a definite amount at a certain date, which an individual has a contractual right to receive. *See, Fuentes*, 38 V.I. 29. *See also, Kikkert v. Kikkert*, 88 N.J. 4, 438 A.2d 317 (1981). Professional degrees rely on uncertain future events and provide only an expectation of enhanced income. The value of a professional degree is speculative and dependent upon the attributes and future choices of its possessor to be fairly valued. *See, In re the marriage of Sally K. Olar*, 747 P.2d 676, 679-80 (1987). *See also, Archer v. Archer*, 303 Md.

---

[20] For the purpose of this Order, education and professional degrees will be used interchangeably.

347, 493 A.2d 1074, 1079 (1985), citing *Deering v. Deering*, 292 Md. 115, 437 A2d 883 (1981). *See also, Mahoney v. Mahoney*, 91 N.J. 488, 453 A.2d 527, 531-32 (1982).

New York is the only jurisdiction so far to rule professional degrees are marital property subject to equitable distribution. *See, O'Brien v. O'Brien*, 66 N.Y.2d 576, 498 N.Y.S.2d 743, 489 N.E.2d 712 (1985). New York legislation provides that a court consider the efforts one spouse has made to the other spouse's career. *See*, N.Y. DOM. REL. LAW § 236(B)(1), (5). In *O'Brien v. O'Brien*, the Defendant-wife sought equitable distribution of the Plaintiff/Husband's license to practice medicine. The Plaintiff commenced the action for divorce two (2) months after obtaining such license. The Plaintiff began his postgraduate classes after the parties were married. For the majority of the parties nine (9) years of marriage, he was working towards a career in medicine. Meanwhile, the Defendant maintained their household, relinquished her opportunity to further her career, and provided financially for the parties. The Defendant provided expert testimony evaluating the present value of the Plaintiff's medical license. *O'Brien v. O'Brien*, 66 N.Y.2d 576, 498 N.Y.S.2d 743, 489 N.E.2d 712 (1985).

██ Here, Dr. Wright-Francis acquired her medical degree in 1992, she began working towards the degree years before the parties were married. There is no evidence that Mr. Francis was unjustly compelled to delay or relinquish his education or career goals in order for Dr. Wright-Francis to pursue her goals. Mr. Francis did not provide testimony on the amount in which he contributed to Dr. Wright-Francis' education. Furthermore, Mr. Francis does not offer personal or expert testimony on the potential or actual worth of Dr. Wright-Francis' degree. Two (2) decades have passed since Dr. Wright-Francis received her medical degree. Mr. Francis failed to provide the Court any substantial or credible evidence to calculate a value of Dr. Wright-Francis' medical degree.

██ The Virgin Islands has long viewed "marriage as a partnership or joint venture, whereby both parties collaborate for a common purpose and contribute toward its success." *See, Fuentes v. Fuentes*, 247 F. Supp. 2d 714 (2003); *Felix v. Felix*, 1998 WL 458499, *2 (D.V.I. 1998).

It is important to note that Mr. Francis also received a higher education degree immediately before the marriage. Mr. Francis acquired his Master's in Business Administration in 1990 and is admittedly a well-qualified astute financial investment manager. The parties testified that

they supported each other with the help of their families in the early years of their relationship and marriage. Both degrees provided an expectancy of a better life, but this was not guaranteed by contract or other form of surety. Even so, both degrees launched successful and profitable careers for the parties. Both parties worked throughout the duration of the marriage and contributed financially to the marriage.

Accordingly, Mr. Francis' evidence and testimony are insufficient to demonstrate that Dr. Wright-Francis' medical degree is marital property. In this instance, Dr. Wright-Francis' medical degree is her separate property and is not subject to equitable distribution.

### 3. Equitable Distribution of Household Furniture and other Property Located at IB-29 Estate Solberg

The Court also has the authority to divide the personal property in divorce action even after a divorce decree has been issued. In *Garcia*, the Supreme Court explains that "the Superior Court will be required to issue rulings on post-divorce ownership of personal property . . . such as cars, boats, electronics, jewelry, shares of stock, bonds and monies deposited with financial institutions . . . ." *Garcia*, 59 V.I. 758.

This Court is guided by *Morris v. Morris*, 20 V.I. 249 (Terr. V.I. 1984), and in the absence of provable ownership, the Court considers the personal property to be jointly owned in equal shares. With respect to the disposition of the household furniture, the evidence satisfies the Court that they are jointly owned by the parties and shall be distributed as set forth in **Appendix A** of this Opinion which is incorporated herein.

### C. Determination on Waste of Marital Assets

In the Order entered by the Court on December 23, 2011, the parties were ordered to *refrain* from "destroying, removing, concealing or otherwise harming or reducing the value of the property of one or both of the parties."[21] In addition, the parties were *authorized* to engage in acts reasonable and necessary to the conduct of the parties' usual business and occupation; make expenditures and incur indebtedness for reasonable attorney's fees; and make expenditures and incur indebtedness for

---

[21] *See*, Paragraph (2) (b) of Order dated December 23, 2011

reasonable and necessary living expenses for food, clothing, shelter, transportation, and medical care.[22]

Dr. Wright-Francis argues that Mr. Francis excessively spent and wasted assets. Dr. Wright-Francis submitted reports and sworn testimony analyzing Mr. Francis' income and expenses.[23]

■ Although there is some evidence that Mr. Francis withdrew Two Hundred Twenty Thousand One Hundred Seventy Nine Dollars and Ninety Three Cents ($220,179.93) between 2011 and 2012, there is no evidence Mr. Francis deliberately destroyed, concealed or harmed the parties property. The money Mr. Francis withdrew from his annuity was used to pay expenses, including expenses associated with his children's care, the marital homestead, businesses and living expenses, they are reasonable and necessary.[24] The Court also considers the fact that Mr. Francis was terminated from his employment with VINGN and used his investments to support his obligations and standard of living.

■ Moreover, the Supreme Court in *Walters v. Walters* explains that there must be sufficient evidence that a party intentionally disobeyed a Court order to be held in contempt. To clarify its position, The *Walters* Court quotes the Court of the Second Circuit of Appeals: "A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.' " *Id.* at 352 (*quoting Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)).

Accordingly, it is not unreasonable to expect Mr. Francis to use his available resources to finance his daily and regular obligations. Dr. Wright-Francis fails to provide clear and convincing evidence of intent to harm marital assets. For that reason, the Court cannot find that Mr. Francis excessively spent and wasted marital assets in 2011 and 2012, in violation of the Court Order entered on December 23, 2011.

---

[22] *id.* at Paragraph 5.

[23] *See*, Respondent's Exhibits 3 and 3A.

[24] Petitioner's bank statements submitted at Deposition show payment to his attorney and reasonable and necessary business and living expenses.

## CONCLUSION

Based on all of the above the Court concludes that both parties individually possess sufficient financial and professional resources to continue to support themselves and their children with a standard of living equivalent to that enjoyed during the marriage. Thus, the post-divorce distribution of the marital homestead and personal property are decided in accordance with this Memorandum Opinion and the accompanying Order of even date.

**ORDERED** that a copy of this Order be directed to Andrew L. Capdeville, Esq. and Julie German Evert, Esq.