**FILED**
October 15, 2025 09:59 AM
ST-2014-DI-00150
TAMARA CHARLES
CLERK OF THE COURT

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| ELDRICK LIBURD, | ) | |
| Plaintiff, | ) | **FAMILY NO. ST-2014-DI-00150** |
| vs. | ) | |
| MARGARET JACINTH LIBURD, | ) | **ACTION FOR DIVORCE** |
| Defendant. | ) | |

Cite as 2025 VI Super 36

Rivers, Clive, Esq.
(Attorney for Plaintiff)

Belfon, Ronald, Esq.
(Attorney for Defendant)

**WATLINGTON, Judge.**

## MEMORANDUM OPINION

### I.   INTRODUCTION

¶1      This matter came on for a trial on February 1, 2018, before Honorable Debra S. Watlington, Judge of the Superior Court of the U.S. Virgin Islands.[1] The Plaintiff, Eldrick Liburd ("Mr. Liburd"), personally appeared and was represented by Clive Rivers, Esq. The Defendant, Margaret Jacinth Liburd ("Mrs. Liburd"), personally appeared and was represented by Ronald Belfon, Esq., Legal Services of the Virgin Islands, Inc. The Court heard sworn testimony from the parties and admitted exhibits into evidence. The parties request this Court grant a divorce absolute and an equitable distribution of real property at 3-2 Estate Beverhoudtsberg, No. 7 Cruz Bay Quarter, St. John, United States Virgin Islands ("Property"). This Court grants: (1) the parties' divorce absolute; (2) Mr. Liburd a twenty-five percent (25%) shared interest in the Property; (3) Mrs. Liburd having a seventy-five percent (75%) shared interest in the Property; and, (4) Mrs. Liburd attorney fees and costs because she is the prevailing party.

### II.   FACTS AND PROCEDURAL HISTORY

¶2      Mr. Liburd is a resident of St. Thomas, United States Virgin Islands. Mrs. Liburd is a resident of St. John, Virgin Islands. The parties were married on December 21, 1986,[2] in St. Thomas, Virgin Islands, and started living apart in 2009. On September 24, 2014, Mr. Liburd filed his verified Complaint for divorce, and requested 50/50 distribution of the Property. On October 28, 2014, Mrs. Liburd filed her Answer, Affirmative Defense and Counterclaim, and averred the parties have no joint interest in the Property or, alternatively, Mr. Liburd's economic fault prohibits him from an interest in Property proceeds.

¶3      Throughout marriage, Mr. Liburd worked in construction while Mrs. Liburd worked as a housekeeper, house sitter, and babysitter. In Mr. Liburd's Complaint, he did not seek alimony because he is gainfully employed and Mrs. Liburd's Answer, Affirmative Defense and Counterclaim was silent about requesting alimony.

---

[1] Plaintiff filed a Motion for Decision on August 27, 2020.
[2] The parties stipulated they were married on December 21, 1986. Transcript 11:13-17.

¶4    Mr. Liburd and Mrs. Liburd have two adult children born of the marriage.

¶5    In 1990, Mr. Liburd and Mrs. Liburd purchased a section of vacant Property with marital earnings.[3]  In 1991, Mr. Liburd substantially labored[4] on the first prefabricated residence and paid workers from his construction business. The parties lived in the prefabricated two-bedroom, one bath, kitchen, and living room home. Subsequently, the parties had a one-bedroom rental constructed and attached to the 1991 prefabricated abode.

¶6    On January 31, 1994, Mr. and Mrs. Liburd signed a Warranty Deed in fee simple as tenants by the entirety with right of survivorship and acquired all of the Property with marital earnings.[5]  They purchased vacant land for $48,000.00, payable in four $12,000.00 annual payments.[6]  The parties used marital earnings that improved the Property through erecting two houses subdivided into three rentable units.

¶7    In 1998, the parties' broke ground on the second dwelling and third residence that Mrs. Liburd occupied at the time of trial.  They capitalized their endeavors with mortgages acquired from The Chase Manhattan Bank, 1First Bank, The Bank of Nova Scotia (Scotia), and a loan from Marion Burton ("Mrs. Burton").  Specifically, the sources of Property funding were:  (1) May 13, 1999, Chase Manhattan Bank, 1First Bank, mortgage for $190,300.00;[7] (2) November 15, 2007, a Second Priority Mortgage from Scotia for $170,000.00;[8] (3) during April to May 2009, the parties avoided foreclosure because Mrs. Burton loaned them $7,759.84 to pay arrearages;[9] and, (4) on July 26, 2010, 1First Bank Modification Note regarding the $190,300.00 mortgage[10] and Modification Agreement in consideration of $10.00 for $197,930.35.[11]

¶8    The parties continued living in one of the three residences on the Property and rented the other two.  One of the apartments rented for $950.00 per month, and the other apartment rented between $1,000.00-$1,100.00 per month.  The rental proceeds were allocated towards the mortgage and household expenses.

¶9    Mrs. Liburd deposited rental proceeds in an account in her name.  The parties had an arrangement that Mr. Liburd agreed to pay mortgage from a bank account in his name.[12]  The parties made monthly loan payments to 1First Bank mortgage, acct: 7060 for $1,300.26,[13] and the Scotia, acct: 0779, for at least $50.00.[14]  In January 2014, the Scotia balance was $138,302.57.[15]

---

[3] Trial Transcript: 15:10-20; The 1990 property transaction is not part of the Court's record in this case.

[4] Mr. Liburd cleared the land, did construction, and poured the concrete slab foundation. 18:1-11.

[5] Warranty Deed Property Description: "3-2 Estate Beverhoudtsberg, No. 7 Cruz Bary Quarter, St. John, O.L.G. D9-5036-T90 . . . Book 35-I, Page 104, Doc. 1299, and entered in Auxiliary 30, page 337 . . ."

[6] Trial Transcript: 15:8-17:7

[7] Loan #: xxxxxx7060, Pltf. Supp. Ex. 2; Def. Ex. H

[8] Pltf. Ex. 4; Scotia Acct. #: 0779, the Scotia loan balance is $138,302.57; 1First Bank, Loan #: 7060, Def. Ex. N

[9] Def. Ex. A; Def. Ex. B

[10] Def. Ex. G

[11] Pltf. Supp. Ex. 3

[12] Trial Transcript: 104:15-23

[13] Pltf. Ex. 3; Def. Ex. G

[14] Def. Ex. N

[15] Def. Ex. N

¶10   In 2000, the marriage began deteriorating.  Mr. Liburd renounced involvement in the Property when he spent weeks away, ignored Mrs. Liburd's phone calls and mail about defaults, and imminent foreclosure.  In October 2009, he disavowed his loan obligation in a conference call with Mrs. Liburd and Brion Morrisette, Esq.[16]  In 2009, Mr. Liburd moved to St. Thomas and signed a new lease while he cohabitated in with his girlfriend.

¶11   On October 15, 2009, it is uncontested Mr. Liburd executed, notarized, and attested a Quitclaim Deed that conveyed 3-2 Estate Beverhoudtsberg, No. 7 Cruz Bay Quarter, St. John, United States Virgin Islands ("Property") to Mrs. Liburd.  There is no evidence the Quitclaim Deed was recorded.  The Quitclaim Deed provided that Mr. Liburd:

> "for and in consideration of Ten Dollars ($10.00) and other good and valuable consideration in hand paid, and does hereby remise, release and quitclaim unto Grantee, Grantee's successors and assigns, all of the right, claim, Title, and interest of Grantor in [The Property including] any improvements thereon and the rights, privileges and appurtenances belonging thereto . . . to . . . the Grantee, Grantee's successors and assigns, forever." [17]

¶12   The parties agreed that Mr. Liburd contributed unknown amounts of marital earnings and individual labor to build the first residence and paid workers for maintenance and to assemble the subsequent rentals.

¶13   The parties had a joint account at 1First Bank.  The source of the money in the 1First Bank account was from the 1First Bank loan.  The parties earmarked the 1First Bank joint account to pay workmen and buy construction materials.  The parties disputed if and what amount Mr. Liburd paid for the workmen and material out the account in his name.  There are no records to support Mr. Liburd's physical labor and alleged expenses.

¶14   The evidence shows that Mrs. Liburd made direct payments in the amount of $47,160.00 to $47,660.00 for workmen and supplies on The Property: (1) March 11, 2010, $5,000.00; [18] (2) November 4, 2010, $16,000.00; [19] (3) April 20, 2011, $500.00;[20] (4) February 28, 2013, $2,800.00;[21] (5) "undated," $9,400.00;[22] (6) April 20, 2012, $4,000.00 or $4,500.00;[23] (7) January 2, 2015, $3,000.00;[24] (8) April 2015, $1,500.00;[25] (9) April 2015, $2,410.00; [26] (10) "undated," $550.00;[27] (11) May 27, 2015, $2,000.00. [28]

---

[16] Invoice #: 10497, October 15, 2009, Def. Ex. K; Commencing in 2004, the parties lived in the same dwelling, would not directly communicate, and Mrs. Liburd sent Mr. Liburd messages or put mail on the table. Trial Transcript 158:19-159:14; Mr. Liburd did not want anything to do with the Property. Trial Transcript 135:10-138:12

[17] Def. Ex. L

[18] Def. Ex. C

[19] Def. Ex. C

[20] Def. Ex. J

[21] Def. Ex. J

[22] Def. Ex. J, payee:  Mitchele Bedminster

[23] Def. Ex. J

[24] Def. Ex. J

[25] Def. Ex. J

[26] Def. Ex. J

[27] Def. Ex. J, date might be April 2015, partially illegible, references "Margaret Liburd" and "Mitchel"

[28] Def. Ex. J

¶15    Mrs. Liburd paid $119,000.00 and additional amounts for the Property from her marital earnings. Her payments went towards reducing the loan balances on the 1Frist Bank, loan: 7060 and Scotia, loan: 0779.

¶16    The parties had a key to their shared post office box and Mrs. Liburd picked up mail addressed to Mr. Liburd and put it on his desk. Occasionally, Mr. Liburd checked his own mail. Mr. Liburd disregarded certified bank letters about loan defaults sent to him on February 19, 2009, April 30, 2009, May 24, 2009, "Final Notice," July 8, 2009, and August 20, 2009. When Mrs. Liburd received the May 24, 2009, "Scotia Bank Final Notice," she attempted to contact Mr. Liburd directly and through his friends, but he ignored her. Despite her efforts, Mrs. Liburd was unable to contact Mr. Liburd. During 2009, he left the marital home, without any arrangement to continue fulfilling his financial responsibilities. By February 2009, Mr. Liburd stopped paying the mortgage and started living with his girlfriend in St. Thomas.

¶17    Mr. Liburd testified he made no mortgage payments after he left in 2009 because from 2006 to 2009 Mrs. Liburd collected $275,000.00 in rental proceeds that she did not put in their joint account. Mr. Liburd argued that Mrs. Liburd could have paid the mortgage, she just did not.

¶18    From February 2009 to January 2012, Mr. Liburd discounted correspondence from 1First Bank, Scotia, and Mrs. Liburd about defaults on the Property. Mrs. Liburd retained an attorney to collaborate with Mr. Liburd about executing the October 15, 2009, Quitclaim Deed conveying the property to her for $10.00 consideration and to stop foreclosure. For this reason, she obtained a loan from her mother in the amount of $3,662.50 to pay legal fees.[29]

¶19    Mr. Liburd gambled and dabbled in the music industry. It is uncontested that Mr. Liburd without knowledge and consent: (1) took thousands of marital dollars from Mrs. Liburd's purse while she slept to gamble in Cruz Bay; (2) withdrew $40,000 from the 1First Bank joint account earmarked for the Property and marital necessities to make a CD, "Chappy Returns Again," in the calypso tent associated with the Nevis music festival; (3) economically harmed Mrs. Liburd in 2009, when he moved away to St. Thomas, signed a new lease while he cohabitated with his girlfriend, and stopped paying the mortgage. These events caused the parties' property to be threatened with foreclosure. Mrs. Liburd was compelled to retain an attorney for communicating with lenders, negotiating with Mr. Liburd, and incurred an additional $7,759.00 loan from Mrs. Burton to avoid foreclosure.

¶20    The parties agreed to a divorce and dispute distribution of the property. Mr. Eldrick requested 50/50 distribution of the Property while Mrs. Liburd contended that she is entitled to 90% of the Property, plus attorney's fees and costs. The Court must decide: (1) whether Mr. Eldrick conveyed his interest in the property by the Quitclaim Deed he executed on October 15, 2009; and, (2) if the parties jointly own the Property, how it should be equitably distributed.

---

[29] Def. Ex K, Invoice #10497, October 27, 2010 - $2,162.50, Def. Ex. M - $1,500.00. See Trial Transcript 138:21-139:7.

### III. ANALYSIS

## A. Legal Standard

### i. *The Court has subject matter jurisdiction to equitably distribute the marital Property.*

¶21    "[M]arital Property means all real and personal property acquired by either spouse subsequent to the marriage, except . . ." certain enumerated categories.[30] Title 16 V.I.C.§ 109(a)(7). "In the Virgin Islands, the Family Division of the Superior Court has jurisdiction to equitably distribute a 'marital homestead' during a divorce action."[31] "This Court . . . interpreted the term 'marital homestead' to mean "any 'homestead' in which a husband and wife both reside during the marriage . . . owned by one or both of the spouses.'"[32] Here, in 1990, the parties used martial earnings to purchase vacant Property which they developed and lived in during the marriage. Thus, pursuant to Tittles 16 V.I.C. § 109(a)(7), 33 V.I.C. § 2305(d), and equity of the case, the Court has subject matter jurisdiction over the Property as the marital homestead.[33]

### ii. *The October 15, 2009, Quitclaim Deed conveying the Property from Mr. Liburd to Mrs. Liburd is valid and the Court retains jurisdiction over the Property until Mr. Liburd's abandonment.*

¶22    After Property development, Mr. Liburd validly quitclaimed the Property to Mrs. Liburd for $10.00 during marriage that negated his legal, but not physical possessory interest. For a deed to be valid, the grantor must execute the deed, it must be attested by two witnesses, and notarized, without requiring the grantee's execution or recordation. Title 28 V.I.C. §§ 41-2, Title 28 V.I.C. § 241.[34] On October 15, 2009, the Quitclaim Deed Mr. Liburd executed was attested, notarized, and validly vested Mrs. Liburd with the Property ownership, regardless of whether she executed or recorded the deed. Consequently, commencing October 15, 2009, Mrs. Liburd's deed and ownership of the Property is proper and enforceable. Mr. Liburd's quitclaim conveyance to Mrs. Liburd did not abrogate this Court's jurisdiction over the Property. However, his subsequent abandonment reclassified the marital Property as Mrs. Liburd's separate property. Notwithstanding Mr. Liburd's abandonment, the sources of Property acquisition and improvements were marital expenditures that incorporated Mr. Liburd's construction skill, efforts, and labor. Therefore, the Court has jurisdiction to apportion Property appreciation to include the principle down payment to consideration of October 15, 2009, Quitclaim Deed and Mr. Liburd's abandonment by December 2009. Equitable consideration includes his pre-abandonment contributions to improvements that increased Property value.

---

[30]*King v. King*, 70 V.I. 3, 13, (V.I. Super. Ct. 2018) see also *Thompson v. Thompson*, 2017 V.I. 155, at *3-4 (V.I. Super. Ct. 2017).
[31]*Demming v. Demming*, 66 V.I. 502, 507 (V.I. 2017) see also *Drayton v. Drayton*, 65 V.I. 325, 333, (V.I. 2016).
[32]*Drayton v. Drayton*, 65 V.I. 325, 336 (V.I. 2016) citing *Harvey v. Christopher*, 55 V.I. 565, 573 (V.I. 2011), V.I. Code Ann. tit. 33, § 2305(d), see also *Garcia v. Garcia*, 59 V.I. 758, 767 (2013), see also *King v. King*, 70 V.I. 3, 13, (V.I. Super. Ct. 2018).
[33] "A conveyance . . . by either husband or wife to or in favor of the other, shall be valid to the same extent as between other persons." Title 16 V.I.C. § 64.
[34] See *Alexander v. Alexander*, 65 V.I. 372, 379-80 (V.I. 2016), *King v. Appleton*, 61 V.I. 339, 347-49 (V.I. 2014), *Harvey v. Harvey*, 55 V.I. 565, 575 (V.I. 2011).

### iii. *Mr. Liburd's abandonment of the Property in late 2009 transmuted the Property from marital property to Mrs. Liburd's separate property.*

¶23     Abandonment means ". . . relinquishing of or departing from a homestead . . . with the present, definite, and permanent intention of never returning or regaining possession . . . the act of leaving a spouse . . . without an intent to return."[35] ". . . [O]ne abandons a property by voluntarily relinquishing . . . rights to it . . . '[m]ere relinquishment of possession . . . is not abandonment in a legal sense . . . the act of abandonment must be an overt act or some failure to act which carries the implication that the owner neither claims nor retains any interest . . .'"[36] When a spouse abandons a marital homestead, abandonment reclassifies property into separate property.[37]

¶24     The parties acquired vacant Property in 1990 and marital resources made it habitable. Beginning in 2009, Mr. Liburd abandoned the Property when he: (1) verbally disclaimed interest in the Property to Mrs. Liburd during a conference call with Attorney Morrisette.; (2) quitclaimed the Property to Mrs. Liburd on October 15, 2009; (3) moved from St. John to St. Thomas, signed a lease, cohabitated with his girlfriend; (4) stopped paying mortgage; and, (5) ignored correspondence from lenders and Mrs. Liburd about foreclosure of the Property. Since Mr. Liburd abandoned the marital homestead in 2009, the Property interests vested in Mrs. Liburd as her separate property. The quitclaim conveyance nullifying Mr. Liburd's legal title alone was insufficient to transmute character of the Property because he could still retain a physical, possessory, and marital interest in the Property. Mr. Liburd's aggregate conduct executing the October 15, 2009, Quitclaim Deed, with his expressed renunciation of Property interests, ceasing mortgage payments, ignoring default notices, and cohabitating with his girlfriend, all evidenced intent to abandon, and in effect is abandonment of the Property.

¶25     By December 2009, Mr. Liburd abandoned the Property. This Court retains subject matter jurisdiction to equitably distribute the Property from purchase to abandonment in December 2009, subject to retaining jurisdiction over the pro-rata increase in the value of Property caused by Mr. Liburd's initial contributions.

### iv. *The Court has subject matter jurisdiction to equitably distribute Property from purchase to abandonment, subject to retaining subject matter jurisdiction to distribute the pro-rata increase in Property value from Mr. Liburd's initial contributions.*

¶26     A party who brings income to the marriage that improves marital property entitles the contributing party to equitable division of the marital homestead.[38] When property improvements arise from marital earnings and efforts, the amount of claimed reimbursement can be offset against a subsequent transmutation.[39] Marital

---

[35] Black's Law Dictionary (12th ed. 2024) See *Phillip v. Phillip*, 2015 V.I. 176, at *5-8, (V.I. Super. Ct. 2015).

[36] *Drayton v. Drayton*, 65 V.I. 325, 338 (2016) citing *Garcia v. Garcia*, 59 V.I. 758, 769 (2013) and *Prue v. Royer*, 67 A.3d 895, 908-09 (Vt. 2013).

[37] *Drayton v. Drayton*, 65 V.I. 325, 336 (2016); *Garcia v. Garcia*, 59 V.I. 758, 769-70 (2013).

[38] *Id.* at 10-13 See also *Demming v. Demming*, 66 V.I. 502, 508-10 (V.I. 2017), *Drayton v. Drayton*, 65 V.I. 325, 340-42 (V.I. 2016).

[39] *Phillip v. Phillip*, 2015 V.I. 176, at *1-3, *10-14, (V.I. Super. Ct. 2015)(holding labor that improved property during marriage is a marital effort separate from claims for reimbursement from pro rata apportionment or appreciation).

contribution and efforts before an abandonment that increase the value of equity in the property are recoverable pro rata reimbursement amounts.[40]

¶27    In 1990, the parties' Property was a vacant uninhabitable parcel.  It is undisputed that Mr. Liburd contributed financially, utilized his construction skills, and resources to improve the Property when the 1991 prefabricated structure was acquired and erected for use as the marital abode.  The development of the residence was from marital earnings and efforts that exponentially increased the pro rata appreciation of the Property value.

¶28    Mr. Liburd's contributions justify an offset for reimbursement because his involvement substantially increased the pro-rata appreciation of the Property value.  Without Mr. Liburd's marital input, the Parties' property would be unimproved land holding significantly less value.  Hence, Mr. Liburd's marital contributions that improved the Property from 1991 before his abandonment in 2009, offset by his economic fault, are within the scope of this Court's equitable distribution authority.  The pro-rata value of his efforts that increased the Property value are also within this Court's equitable distribution because his skill, effort, labor, and marital expenditures occurred before he abandoned the Property by December 2009.

### v.    *Equity of the case on abandonment and economic fault governs equitable distribution.*

¶29    Although the Virgin Islands is a no fault divorce jurisdiction, Courts apply economic fault defined as, ". . . conduct relating to the economic position of the parties . . .[,]" to calculate equitable property distribution.[41]  To effectuate economic justice in no fault jurisdictions, Courts are empowered to compensate an innocent spouse when a guilty and/or liable spouse "'negatively affected the economic status of the parties,' such as 'if a spouse gambles away all savings and retirement funds, and the assets are inadequate to allow the other spouse to recoup her share.'"[42]  Thus, because of 16 V.I.C. § 109(a)(7), 33 V.I.C. § 2305(d), and equity of the case, the Court has subject matter jurisdiction over the Property as the marital homestead up to Mr. Liburd's 2009 abandonment.[43]

¶30    When a marriage is dissolved, the Court apportions marital property within "equity of the case" based on equitable distribution.[44]  Equitable distribution imparts a fair and just division of the parties' property and may not always be equal division.[45]  Abandonment negates equitable distribution because abandonment reclassifies

---

[40] *Id.*; see also *Drayton v. Drayton*, 65 V.I. 325, 332-36 (V.I. 2016) and *Garcia v. Garcia*, 59 V.I. 758, 767-82, (V.I. 2013).

[41] *Demming v. Demming*, 66 V.I. 502, 511 (V.I. 2017)(holding economic fault, not marital fault, is a relevant factor in consideration of equitable property distribution).

[42] *Garcia v. Garcia*, 59 V.I. 758, 783 n.9 (V.I. 2013)(citations omitted)(holding an equitable distribution analysis under V.I. Code Ann. tit. 33, § 2305(d) encompasses applying economic fault, not marital fault, to lower or eliminate property distribution).

[43] "A conveyance . . . by either husband or wife to or in favor of the other, shall be valid to the same extent as between other persons." Title 16 V.I.C. § 64.

[44] 33 V.I.C. § 2305(d); *King v. King*, 70 V.I. 3, 16, (V.I. Super Ct. 2018); *Demming v. Demming*, 66 V.I. 502, 507-509, (V.I. 2017). *Drayton v. Drayton*, 65 V.I. 325, 333-34, 341-42 (2016); *Garcia v. Garcia*, 59 V.I. 758, 767-82, (V.I. 2013).

[45] *Francis v. Wright-Francis*, 61 V.I. 13, 24, (V.I. 2014) see also *Drayton v. Drayton*, 65 V.I. 325, 333, (V.I. 2016)(emphasizing intent and timing of separation before filing for divorce that denotes abandonment for justification of unequal property division).

preexisting marital property into the legal and physical holder spouse's separate property.[46] Egregious economic fault eliminates <u>or</u> reduces the amount that the property would otherwise be equally apportioned.[47] Commonly applied factors for equitable distribution to divide property include:

> "**the duration of the marriage**, prior marriage of either party, antenuptial agreement of the parties, the **age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties,** custodial provisions, whether the **apportionment is in lieu of or in addition to maintenance,** . . . the **opportunity of each [party] for future acquisition of capital assets and income[,]** . . . the **contribution or dissipation of each party in the acquisition, preservation, depreciation, or appreciation in value of the . . . estate[ ],** and the contribution of a spouse as a homemaker or to the family unit."[48] emphasis added

¶31    Here, factors governing equitable distribution are based on: **(1)** duration of marriage; **(2)** occupational, vocational skills, employability; **(3)** amount and source of income; **(4)** apportionment in lieu of or in addition to maintenance; **(5)** opportunity of each party for future acquisition of capital assets and income; **(6)** apportionment in lieu of or in addition to maintenance; and, **(7)** the contribution or dissipation of each party in the acquisition, preservation, depreciation, or appreciation in value of the estate.

## 1. Duration of the Marriage

¶32    Duration is an equitable factor the courts consider in distributing marital property.[49]    However, the duration of marriage is not dispositive.[50]   For example, economic fault can override equal distribution in a twenty year marriage.[51]   Similarly, after a seventeen year marriage and in lieu of alimony, under "equity of the case," the Virgin Islands Supreme Court awarded the entirety of a jointly held marital homestead to the wife.[52]

¶33    Here, the parties married on December 21, 1986, have two adult children of the marriage, and separated by December 2009.  On September 24, 2014, after almost a twenty-eight-and-a-half-year marriage, Mr. Liburd filed for divorce.  The parties' duration of marriage is only one consequential, but not outcome determinative factor.

## 2. Health, Station, Occupation, Vocational Skills, Employability

¶34    A party's occupation, vocational skills, and employability is subsumed into "equity of the case" distribution considerations.[53]   Disproportionate earning capacity, vocational skills, and employability are

---

[46] *King v. King*, 70 V.I. 3, 15-16, (V.I. Super. Ct. 2018); *Demming v. Demming*, 66 V.I. 502, 508, (V.I. 2017 n.5 citing *Williams v. Williams*, 72 N.C. App. 184, 187-188, 1984 citing *Banks v. Banks*, 77 N.C. 186, 187 (1877); *Drayton v. Drayton*, 65 V.I. 325, 333-45 (2016); *Garcia v. Garcia*, 59 V.I. 758, 768-71 (2013).
[47] *Id.*
[48] *King v. King*, 70 V.I. 3, 17-18, (V.I. Super. Ct. 2018) referencing *Armstrong v. Armstrong*, 266 F. Supp. 2d 385, 395 (D.V.I. App. Div. 2003); *Demming v. Demming*, 66 V.I. 502, 508-09, (V.I. 2017).
[49] *Demming v. Demming*, 66 V.I. 502, 508-509, (V.I. 2017).
[50] *Demming v. Demming*, 66 V.I. 502, 505, 511-13, (V.I. 2017).
[51] *Demming v. Demming*, 66 V.I. 502, 505, 511-13, (V.I. 2017)
[52] *Martin v. Martin*, 58 V.I. 620, 627, (V.I. 2013).

equitably counterbalanced towards Courts finding that marriage is a partner-like joint venture, whereby economic and non-economic contributions are equal.[54] For instance, Courts invoke equal economic value to a homemaker for cooking, cleaning, and childrearing, as a construction worker who is the financial breadwinner[55]

¶35    Here, there is nothing to indicate the parties were acting in bad faith for their professional sustainability or incapable of securing individual futures. They initially acquired and improved the Property as a partner-like joint venture. Mr. Liburd, as a construction worker and entertainer, and Mrs. Liburd, as a housekeeper, homemaker, and property manager. Their initial disproportionate financial contributions to the marital property are inconsequential to the value that their joint ventures improved the Property. Mr. Liburd has higher earning capacity than Mrs. Liburd because of his years of construction experience and expertise in the music industry, i.e.: the CD "Chappy Returns Again," compared to Mrs. Liburd as a housekeeper, homemaker, and property manager. However, considering the waiver of alimony, the hardship factors, the equity of the case favors Mrs. Liburd's legal and physical possession of the Property.

### 3. Property apportionment in Lieu of Maintenance

¶36    The general rules governing maintenance are found in Title 16 V.I.C. § 109(a)(3) and Title 16 V.I.C. § 342(a)(1).[56] In the case at hand, Mr. Liburd waived alimony because he is gainfully employed and Mrs. Liburd's pleadings omitted alimony. Mr. Liburd's earning capacity, skills, and experience in construction and the music industry disproportionately exceeds Mrs. Liburd's earning ability as a housekeeper, house sitter, babysitter, and now property manager. In lieu of alimony, this Court has equitable discretion to decree property apportionment as an in-kind equitable distribution between the parties for Property liabilities and upkeep.

### 4. Contribution or Dissipation of each party in the Acquisition, Preservation, Depreciation, or Appreciation in value of the Estate

¶37    Contributions are direct monetary expenditures or labor.[57] Wasteful dissipation of assets is unreasonable compensable marital expenditures.[58] Dissipation means, "The use of an asset for an illegal or inequitable purpose, such as a spouse's use of . . . property for personal benefit when divorce is imminent."[59] Reasonable and necessary

---

[54] *Demming v. Demming*, 66 V.I. 502, 507-09, (V.I. 2017); *Drayton v. Drayton*, 65 V.I. 325, 340-342, (V.I. 2016); *Martin v. Martin*, 58 V.I. 620, 623, (V.I. 2013).

[55] *Drayton v. Drayton*, 65 V.I. 325, 340-342, (V.I. 2016); *Martin v. Martin*, 58 V.I. 620, 623, (V.I. 2013).

[56] *Evans-Freke v. Evans-Freke*, 78 V.I. 563, 575-76 (V.I. 2023)(citations omitted)(holding: (1) before a Divorce Decree is entered, the Superior Court may *sua sponte* Order alimony; (2) after a Decree, "'. . . statutes do not impose upon the former husband . . . the duty to support his former wife, except as . . . imposed by the decree of divorce under the authority of 16 V.I.C. §§ 109(3) and 110.'"); 16 V.I.C. §109(a)(3); *King v. King*, 70 V.I. 3, 20-2, (V.I. Super. Ct. 2018); *Berrios-Rodriguez v. Berrios*, 58 V.I. 477, 486-91, (V.I. 2013); 16 V.I.C. § 392(6); *Leonard v. Leonard*, 18 V.I. 248, 251, (V.I. Super. Ct. 1982).

[57] *Demming v. Demming*, 66 V.I. 502, 509, 511-13, (V.I. 2017) see also *Drayton v. Drayton*, 65 V.I. 325, 340 (V.I. 2016).

[58] Caufield v. Anthony, 2019 V.I. LEXIS 170, at *9 (V.I. Super. Ct. 2019) citing *Francis v. Wright-Francis*, 61 V.I. 13, 31-32 (V.I. Super Ct. 2014); *Morrisette v. Morrisette*, 2014 V.I. 143, at *16-19, (V.I. Super. Ct. 2014).

[59] Black's Law Dictionary (12th ed. 2024).

living expenses are generally for food, clothing, shelter, transportation, and medical care.[60] Wasteful dissipation of assets is economic fault because it negatively affects economic standing.[61]

¶38    Mr. Liburd contributed money, skill, improvements, renovations, and repairs. He also committed wasteful dissipation of marital assets and unreasonable marital expenditures. Specifically, Mr. Liburd, without consent, withdrew $40,000 in marital assets to attend a Nevis music festival to make the CD "Chappy Returns Again," for his personal use. He took money from his wife's purse to gamble while she was asleep. He unilaterally stopped paying the mortgage.[62] He used marital earnings to move to St. Thomas and sign a new lease to pay rent with his girlfriend. Mrs. Liburd spent $119,000.00 on consensual Property improvements, maintenance, and preventing foreclosure. The source of Mrs. Liburd's Property expenditures came from marital rental income, marital earnings from her employment, and loans, including from her mother.

### 5.  Amount and Source of Income

¶39    Property acquired after the date of marriage with marital assets is marital property, unless for an exception such as abandonment.[63] After the date of marriage in 1990, the parties used marital resources to acquire part of the Property with a Warranty Deed and, in 1991, they acquired the entire Property. In 1991, the parties constructed a prefabricated home. Mr. Liburd allocated marital assets to improve the Property and assemble the structure. Subsequently, both parties applied marital earnings from Mr. Liburd's construction work, the rentals, and Mrs. Liburd's earnings to enhance and maintain the Property. Although the Property was marital property acquired and improved with marital assets, on abandonment in 2009 the Property was converted to Mrs. Liburd's separate property. Nonetheless, the Court retains subject matter jurisdiction to apportion the pro-rata increase in equitable value from Mr. Liburd's pre-abandonment contributions that increased the post-abandonment worth.

### vi.    *Mr. Liburd's abandonment is economic fault that limits his post 2009 property distribution*

¶40    Abandonment consists of two steps.[64] First, this Court must determine whether Mr. Liburd, the party claiming rights to property, abandoned the marital homestead, and, second, whether the Property was vacated before or after divorce proceedings commenced.[65] Courts analyze these prongs because presumptive marital

---

[60] *Francis v. Wright-Francis*, 61 V.I. 13, 31-32 (V.I. Super Ct. 2014).

[61] *Demming v. Demming*, 66 V.I. 502, 508-09, 511-13, (V.I. 2017)(holding equity of the case includes economic fault attributable to equitable property distribution.)

[62] Trial Transcript:  38:4-39:20; 102:23-103:3; 104:15-106:8.

[63] 16 V.I.C.§ 109(a)(7); 33 V.I.C. § 2305(d); *King v. King*, 70 V.I. 3, 13-18, (V.I. Super. Ct. 2018) see also *Thompson v. Thompson*, 2017 V.I. 155, at *3-4 (V.I. Super. Ct. 2017); *Demming v. Demming*, 66 V.I. 502, 507-509, (V.I. 2017); *Drayton v. Drayton*, 65 V.I. 325, 333-34, 341-42 (2016); *Phillip v. Phillip*, 2015 V.I. 176, at *1-3, *10-14, (V.I. Super. Ct. 2015); *Garcia v. Garcia*, 59 V.I. 758, 767-82 (V.I. 2013).

[64] *Demming v. Demming*, 66 V.I. 502, 508, n.5 (V.I. 2017); *Phillip v. Phillip*, 2015 V.I. 176, at *1-3, *10-14, (V.I. Super. Ct. 2015); *Garcia v. Garcia*, 59 V.I. 758, 768-70, (V.I. 2013); *Drayton v. Drayton*, 65 V.I. 325, 336-40, (V.I. 2016)

[65] *Id.*

homestead rights endure until evidence of abandonment[66] and Superior Court in a divorce case has no subject matter jurisdiction over property that becomes abandoned property recharacterizing it into separate property.[67]

¶41    Sequentially, pursuant to the first prong: abandonment in part means, ". . . acts and conduct positive, unequivocal, and inconsistent with his claim of title . . ."[68] Acts, conduct positive, unequivocal, and inconsistent with the claim of title are delineated when there is "'clear and competent evidence' someone 'voluntarily and intentionally relinquished or disclaimed property rights' in the marital homestead."[69]

¶42    To determine whether Mr. Liburd abandoned the home and waived his property rights, this Court considered: (1) whether external factors, such as a court order, precluded contact; (2) whether incidents required him to leave for his safety; (3) whether he permanently left the home; (4) the length of time between his departure from the home and the commencement of the action for divorce; and, (5) any mitigating circumstances.[70]

¶43    Mr. Liburd's acts and conduct were unequivocally contrary to his claim of title substantiating that he abandoned the Property. Clear and competent evidence of his abandonment is evident when he voluntarily and intentionally renounced involvement in the Property. In October 2009 during a conference call with Mrs. Liburd and Attorney Morrisette, he disavowed his loan obligations contending he wanted nothing to do with the Property and moved away from the Property. On October 15, 2009, it is uncontested that Mr. Liburd signed, notarized, and attested a Quitclaim Deed expressly intending to convey and assign all his rights in the Property to Mrs. Liburd for consideration of $10.00. From February 2009 to January 2012, Mr. Liburd ignored default correspondence from 1First Bank, Scotia and Mrs. Liburd about imminent foreclosure. Additionally, in 2009, Mr. Liburd exhibited abandonment when he moved to St. Thomas, signed a lease, and started cohabitating with his girlfriend.

¶44    Consistent with the second prong: when a party exemplifies conduct the marriage will not last and allows years to lapse between moving out and filing for divorce, with lack of legitimate explanation, the property is deemed abandoned because it was vacated before divorce proceedings were filed.[71]

¶45    Mr. Liburd permanently vacated the property by December 2009, approximately five years before he filed his Complaint for divorce in September 2014. Similar to established precedent, Mr. Liburd offered no admissible evidence that he vacated the Property because he suffered abuse or feared for his safety.[72] Mr. Liburd showed unreasonable dilatory delays between permanently vacating the Property and filing for divorce five years later.

---

[66] *Drayton v. Drayton*, 65 V.I. 325, 339 (V.I. 2016).

[67] *Garcia v. Garcia*, 59 V.I. 758, 767-68, (V.I. 2013).

[68] *Demming v. Demming*, 66 V.I. 502, 508, n.5 (V.I. 2017) citing *Williams v. Williams*, 72 N.C. App. 184, 187-188, 1984 citing *Banks v. Banks*, 77 N.C. 186, 187 (1877) for the original "abandonment" definition.

[69] *Demming v. Demming*, 66 V.I. 502, 508, n.5 (V.I. 2017) citing *Drayton v. Drayton*, 65 V.I. 325, 338 (V.I. 2016) citing *Garcia v. Garcia*, 59 V.I. 758, 769, (V.I. 2013).

[70] *Phillip v. Phillip*, 2015 V.I. 176, at *1-7, (V.I. Super. Ct. 2015).

[71] *Garcia v. Garcia*, 59 V.I. 758, 770 (V.I. 2013) see also *Phillip v. Phillip*, 2015 V.I. 176, at *1-3, *10-14, (V.I. Super. Ct. 2015).

[72] *Garcia v. Garcia*, 59 V.I. 758, 770 (V.I. 2013).

Based on the totality of circumstances, Mr. Liburd is deemed to have abandoned the Property resulting in its conversion to Mrs. Liburd as her separate property.

¶46    Finally, the Court may nullify Mr. Liburd's post 2009 interests in the Property because he voluntarily, intentionally, and overtly abandoned, repudiated, and relinquished existence in the Property, and disclaimed property rights through the Quitclaim Deed, misconduct, and malfeasance. Relinquishing responsibility for the Property coupled with his conduct means that Mr. Liburd abandoned his interest in the Property and nullified his rights to post 2009 equitable distribution. Consequently, Mr. Liburd's post 2009 abandonment caused him to lose his interest in and for the marital Property to be reclassified as Mrs. Liburd's separate property.

### vii.    *Mr. Liburd's economic fault prohibits him from 50/50 distribution of the Property*

¶47    A Court must equitably distribute marital property in consideration of economic fault that impacted the failure of marriage and subtract or admonish pro rata apportionment.[73] The Court enforces actionable economic fault circumventing equitable distribution when a spouse gambles savings creating inadequate resources for the other spouse to recoup their fair share, factors adultery when it causes a loyal spouse's destitution, and negative implications on the social and economic familial position.[74]

¶48    Mr. Liburd's abandonment and economic fault sufficiently rebutted the 50/50 marital presumption in Title 16 V.I.C. § 109(a)(7). Mr. Liburd's unauthorized expenditures of marital assets and infidelity were relevant to the economic position of matrimony and negatively affected the economic status of the family.[75] As mentioned herein, Mr. Liburd gambled and illicitly used marital funds to pursue his personal musical interests. His gambling, music CD production, and extramarital affair economically harmed Mrs. Liburd in 2009, when he started cohabitating with his girlfriend and halted mortgage payments. These events caused the parties' imminent foreclosure, forcing Mrs. Liburd to incur legal expenses to negotiate with lenders and Mr. Liburd, and the parties additional debt, the $7,759.00 loan from Mrs. Burton to prevent foreclosure. Mr. Liburd unjustifiably threw Mrs. Liburd into economic despair, financial ruin, humiliation, and forced her to ask Mrs. Burton for money, all while he satisfied a new life in St. Thomas, never to return. Any property distribution after 2009 from Mrs. Liburd's direct contributions aside from pro rata equity apportionment prior thereto would exploit Mrs. Liburd's responsible stewardship to her legal financial obligations (i.e. payment of mortgages) and unjustly enrich Mr. Liburd.

¶49    Finally, this Court has the authority to apply economic fault to thwart Mr. Liburd's claim of 50/50 distribution for any percentage of the Property. Instead, his abandonment and economic fault precludes him from

---

[73] King v. King, 70 V.I. 3, 18, n.25 (V.I. Super. Ct. 2018); *Demming v. Demming*, 66 V.I. 502, 512-13, (V.I. 2017).
[74]*Id.*, Title 16 V.I. C. § 341(g).
[75] *King v. King*, 70 V.I. 3, 18, n.25 (V.I. 2018); *Demming v. Demming*, 66 V.I. 502, 512-13, (V.I. 2017); *Garcia v. Garcia*, 59 V.I. 758, 783, n.9 (V.I. 2013).

any post 2009 entitlement. The only post 2009 equitable distribution Mr. Liburd is entitled to arises from the pro-rata increase in Property value from his pre December 2009 contributions to the Property.

## IV. CONCLUSION

¶50 The parties are entitled to a divorce absolute. This Court has subject matter over the Property from 1990, the time of purchase, until Mr. Liburd's abandonment and economic fault in December 2009. The Court has subject matter jurisdiction to equitably apportion the pro-rata increase in Property value from Mr. Liburd's pre December 2009 contributions to Mr. Liburd, minus economic fault and post 2009 abandonment.

¶51 The parties used marital funds to purchase the Property. From 1991 to 1999, Mr. Liburd used his construction skills, experience, knowledge, and labor to improve the vacant parcel resulting in three rentable units. However, Mr. Liburd did not provide the Court with evidence of Property expenses. It is uncontroverted that without Mr. Liburd's pre-2009 abandonment developments, the Property would be worth less. Conversely, his abandonment and economic fault negate his rights to the Property's principle, but permits him a pro rata percentage increase of Property appreciation from his pre abandonment contributions. Mr. Liburd's request for 50/50 property distribution at trial was diminished to a 25% pro rata equitably apportioned interest from his pre 2009 abandonment and economic fault.[76]

¶52 Based on all of the above, the Court concludes that an equitable distribution of the Property is as follows:

> ➤ Mr. Liburd is to be awarded a twenty-five percent (25%) pro-rata apportioned equitable interest in the appraised value of the Property for his contributions that increased the Property's equity and value from his pre 2009 contributions, before his abandonment and economic fault.

> ➤ Mrs. Liburd is to be awarded a seventy-five percent (75%) equitable interest in the appraised value of the Property.

¶53 Mrs. Liburd is also granted $3,662.50 in attorney's expenses incurred for paying Brion Morrisette, Esq., and mortgage lenders to negotiate and prevent the property from being foreclosed.[77] Pursuant to Title 5 V.I.C. § 541, it is within this Court's discretion to grant attorney fees and costs to Mrs. Liburd, the prevailing party.[78]

> The amount of attorney fees and costs must be fair and reasonable.[79] Fair and reasonable fees and costs are exemplified through, "time and labor required, the novelty and difficulty of the questions involved, the skill requisite properly to conduct the cause, the customary charges of the bar for similar services, the amount involved in the controversy, the benefits resulting to the client from the services, and the contingency or certainty of the compensation."[80]

---

[76] At trial, Mrs. Liburd's request for Mr. Liburd to receive 10% was increased to 25%.

[77] Def. Ex K, Brion Morrisette, Esq., Invoice #10497, October 27, 2010, $2,162.50 + Def. Ex. M, $1,500.00, legal fees associated with mortgage lenders = $3,662.50

[78] *Slack v. Slack*, 71 V.I. 1139, 1142 (V.I. 2019); *Poe v. Poe*, 7 V.I. 30, 38 (3d Cir. 1969).

[79] Canon 12 of the Canons of Professional Ethics of the American Bar Association 1; *Wenner v. Government of the Virgin Islands*, 29 V.I. 158, 162-167 (D.V.I. 1993); *Alexander v. Montoute*, 20 V.I. 98, 99, (V.I. Super. Ct. 1983) *citing Lucerne Inv. Co. v. Estate Belvedere*, 411 F.2d 1205, 1207 (V.I. 1969); see also 9 ABA Model Rules of Professional Conduct and Code of Judicial Conduct 1.5.

[80] *Id.*

By operation of law as the prevailing party within the scope of Title 5 V.I.C. § 541 and Canon 12 of the Canons of Professional Ethics of the American Bar Association, this Court has discretionary power to award Mrs. Liburd attorney's fees and costs.

Accordingly, it is hereby

**ORDERED** that the Findings of Fact and Conclusions of Law and Decree of Divorce shall be issued separately consistent with the Memorandum Opinion; and it is further

**ORDERED** that a copy of this Memorandum Opinion shall be directed to Ronald Befron, Esq., Legal Services of the Virgin Islands, Inc., and Clive Rivers, Esq.

**DATED: October _15_, 2025**

**DEBRA S. WATLINGTON**
**Judge of the Superior Court**
**of the Virgin Islands**

**ATTEST:**
**TAMARA CHARLES**
**Clerk of the Court**

By: _____

**Brenda Monsanto**
**Court Clerk Supervisor** 10 | 16 | 2025



**FILED**

October 16, 2025 10:09 AM
ST-2014-DI-00150
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
District of St. Thomas/St. John

**ELDRICK LIBURD,**
    **Plaintiff**

**v.**

**MARGARET JACINTH LIBURD,**
    **Defendant.**

Case Number: **ST-2014-DI-00150**
Action: **Divorce - Uncontested**

## NOTICE of ENTRY
## of
## <u>MEMORANDUM OPINION</u>

**To:** Clive Rivers, Esq

              Shelby Ann King Gaddy, Esq.

              Judges and Magistrates of the
              Superior Court of the V.I.

**Please take notice that on October 16, 2025**
**a(n)**    **MEMORANDUM OPINION**
**dated** OCTOBER 15, 2025 **was/were entered**
**by the Clerk in the above-titled matter.**

**Dated:** **October 16, 2025**

             **Tamara Charles**
             **Clerk of the Court**

By:

             **Brenda Monsanto**
             **Court Clerk Supervisor**